Bernard S. Meyer, J.
At issue in this consolidated tax certiorari proceeding are the assessed valuations for the tax years 1967-1972 of a 23.72-acre parcel of land located on the east side of Brush Hollow Road approximately 900 feet south of Oantiague Highway in Jericho, N. Y. and improved by a screen structure, projection booth and other buildings necessary for operation of a drive-in theatre. For each of the years in question the assessed valuation was $277,350. The equalization rates have been stipulated as: 1967-1969 — 33%% ; 1970 — 32%; 1971-1972 — 30%.
Petitioner is the lessee under a 63-year ground lease commencing January 1,1954, at a rental of $30,000 per year for the first 42 years and $35,000 for the last 21 years. Petitioner was required to and did build the necessary structures for a drive-in theatre, which at termination of the lease become the property of the lessor. Petitioner is obligated by the lease to pay all taxes and similar charges.
The battle between the experts revolves around the effect to be given the present use under the long-term lease. The position of the county’s expert is that a drive-in is not the highest and best use, that sales in the area show that the value of the plot for other uses is so great that a willing and knowledgeable purchaser would purchase in order to demolish the improvements and devote the land to a more profitable use, and that fair market value by definition assumes the sale of the entire bundle of rights of both lessor and lessee, as willing but not obligated sellers. Petitioner argues that highest and best use is a condemnation concept that has no place in tax assessment, that the property must be valued on the basis of the existing use and taking into consideration the burden of the long-term lease.
The court does not find it necessary to pass upon the county’s highest and best use concept,[1] because it concludes that petitioner has not sustained its burden of proving the assessments excessive. Judicial review is limited to the total assessments (Real Property Tax Law, § 502, subd. 3), and since petitioner *1079 concedes that the improvements are worth less than the total assessment, a failure of proof concerning the valuation of the land requires dismissal of the proceeding (People ex rel. Harway Improvement Co. v. Berry, 229 App. Div. 565).
Petitioner presented proof on three valuation approaches: market, cost or sound value, and income. As to market value its proof was that there is no market for drive-in theatre property, there being only two in the county, and the only sale having been of a third, which was, however, sold for department store use. As to sound value (reproduction cost less depreciation plus land value), its expert computed land value by capitalizing the rental called for by petitioner’s ground lease. As to income, petitioner’s expert obtained the value of the land and buildings by using the building residual technique and the land value obtained by capitalizing the ground rental to extrapolate from an hypothetical rent based on a percentage of gross receipts that portion of the hypothetical rent attributable to improvements, capitalizing that figure to obtain the value of the improvements. Since petitioner’s cost and income figures are both dependent upon use of the same land value, neither is valid unless the land value has been properly fixed.
The court finds that land value has not been properly fixed. The reason given by petitioner’s expert for capitalizing the ground rent and paying no attention to sales of vacant land or improved land purchased with the intention of demolishing the improvements was simply that he found no sales of such land purchased for drive-in theatre use. He conceded, however, that as vacant land, the value of the subject property would have increased between 1954 when the ground lease was made and the tax status dates (May 1, 1966-May 1, 1971) in question, and, indeed the court may take judicial notice of that fact (Matter of City of New York [James St.], 21 N Y 2d 293, 301).
Petitioner’s brief cites no legal authority sustaining its land valuation, nor does the county cite any such authority for its contention that the land must be valued by going to the market, 1 hough it may be inferred from some of the decisions concerning specialty properties that the unit value used was estimated from the market (see, e.g., People ex rel. New York Stock Exch. Bldg. Co. v. Cantor, 221 App. Div. 193, affd. 248 N. Y. 533; People ex rel. New York Athletic Club v. Chambers, 297 N. Y. 986, affg. 272 App. Div. 895, modfg. 187 Misc. 31). If, however, one turns to Friedman, Encyclopedia of Real Estate Appraising, one finds that neither petitioner nor the county is entirely correct. In its chapter on Cost Approach to Value, that text states *1080 (p. 52): “ The value of the land is generally estimated by comparing the subject property with similar property in the area, and making adjustments for differences between the subject and the comparison property. (See page 261 for a discussion of land value by comparison.) ” and (pp. 261-262) states that land value is to be estimated “ disregarding the present improvements on the property ” (emphasis supplied) and “ may be indicated by: (1) current sales of comparable vacant land, (2) rental from currently made ground leases, (3) sales of comparable sites that are improved, or (4) offers to purchase and sell.
“Sales of vacant land. The most dependable land value conclusions are indicated by current sales of comparable vacant land. The appraiser chooses a unit of comparison. The front foot unit on the principal retail street in the area is an excellent unit to employ if the subject property and sales comparison property have nearly identical shape and depth characteristics. The square foot unit is somewhat more accurate for comparison of properties of varying depths.
“Rental from ground lease. A land value indication based on rental from a currently made ground lease may also be used effectively for comparison with the subject site. The rental is reduced to a net return, after deduction of all landlord’s expenses of ownership, including management. Capitalization of the net return, at the current interest rate required to attract capital to such an investment, indicates the value attributed to the land by both parties to the lease.
“ Sale of improved sites. The sale of comparable sites which are improved may be adapted for comparative use, if the appraiser is sufficiently experienced to judge the economic contribution of improvements to property value. The subtraction of a reasonable value allocated to improvements from the gross sales price tends to indicate the value attributed to the land by the parties to the sale.
“ Offers to purchase and sell. Offers to purchase and offers to sell are secondary for comparison purposes, since they indicate the value of thinking of one party only, thinking that has not been accepted by a second party. However, offers may prove helpful supplements to conclusions that are clearly indicated otherwise.”
The court concludes that land value based solely upon a 12-year-old ground lease and which, in the face of a rising land market in the area, wholly ignores current sales of comparable vacant land is not a proper basis for arriving at the ‘ ‘ full *1081 value ” of the subject property. Petitioner’s approach to land value by giving conclusive weight to the ground lease and ignoring sales of vacant land and improved property purchased for land use, flies in the face of the requirement that “in arriving at the true value for tax assessment purposes of real property subject to a lease, an appraisal is to be made of the property as a whole regardless of the effect of the lease upon the value of the owner’s interest” (People ex rel. Gale v. Tax Comm. of City of N. Y., 17 A D 2d 225, 229; see, also, Matter of Knickerbocker Vil. v. Boyland, 16 A D 2d 223, affd. 12 N Y 2d 1044).
While the foregoing disposes of the matter, the court should perhaps note that were it not dismissing the petition for failure of proof, it would decline to accept petitioner’s income approach and would value the property on the basis of its sound value. Petitioner argues that sound value merely establishes the ceiling, (People ex rel Manhattan Sq. Beresford v. Sexton, 284 N. Y. 145), and that value “arrived at by capitalization of the fair rental value is, in ordinary cases, the surest guide to a sound appraisal” (People ex rel. Gale v. Tax Comm., supra, p. 230). Though that is the rule 1 ‘ in ordinary cases ’ ’, the measure of value for a “ specialty ” is sound value, provided only that the structural improvements are adequate for the site (see Matter of Semple School for Girls v. Boyland, 308 N. Y. 382, 389; People ex rel. Hotel Paramount Corp. v. Chambers, 298 N. Y. 372, 375; Matter of Federated Department Stores v. Podeyn, 32 A D 2d 823, mot. for Iv. to app. den. 25 N Y 2d 739; see Lee and LeForestier, Beview and Beduction of Beal Property Assessments, p. 13; cf. Ann. 96 ALB 2d 666, 679). A specialty has been defined as a structure designed for unique purposes (Matter of Semple School for Girls v. Boyland, supra) or one which produces income only in connection with the business conducted in it (People ex rel. Hotel Paramount Corp. v. Chambers, supra). Whichever definition is used, there can be no question that this drive-in theatre, which is one of two in the county, is unique in its structural character, and produces income from the movie exhibition business carried on in its structures, is a specialty (see Matter of City of New York [Lincoln Sq. Slum Clearance Project], 15 A D 2d 153, 171, affd. 12 N Y 2d 1086; Dipson Realty Co. v. State of New York, 39 A D 2d 636). The criteria for determination of suitability or adequacy of the improvements for the site are not clearly developed by the cases but appear to relate to the income of the business conducted within the improvement (People ex rel. *1082 Hotel Paramount Corp. v. Chambers, supra; Matter of City of New York [Chrystie St.], 236 App. Div. 321, affd. 260 N. Y. 583; Matter of Federated Department Stores v. Podeyn, supra). Clearly, the improvements are adequate when property is used for its highest and best use, but the two concepts differ and a use less than highest and best does not require a finding that the improvements are not suitable to the site (Matter of Pepsi-Cola Co. v. Tax Comm. of City of N. Y., 19 A D 2d 56, 58). The evidence supports a finding that the improvements are adequate to the site, and the conclusion that sound value is the proper measure for this specialty.

. But see Matter of Kalski v. Fitzgerald (25 A D 2d 573, 574).