Joseph A. Sarafite, J.
Petitioner, New York Yankees, Inc., as lessee, sues to have the court review the real estate tax assessments on the Yankee Stadium for the seven tax years 1965/1966 through 1971/1972. The total assessment for each of these years was $5,000,000.
The land is owned in fee hy the Knights of Columbus, a fraternal organization, and the stadium is owned by Bice University. Neither owner is a party to this suit.
The petitioner is obligated to pay, in addition to rent, all operating and maintenance charges including real estate taxes. As such it is an aggrieved party entitled to sue within the meaning of the applicable statute (New York City Charter, §§ 163, 166; see Matter of Burke, 62 N. Y. 224; also Real Property Tax Law, § 704).
The property consists of a large block of land located in the Borough of The Bronx, City of New York, and amounts to 9.75 acres, measuring in all more than 420,000 square feet. It is improved with a three-tiered sports stadium structure built in 1922, consisting of a three-story and basement grandstand and a one-story bleachers section. Additions were made in 1928, 1933 and 1936. It has a seating capacity of 64,728 seats. The stadium also contains press boxes, locker rooms, club houses, office and miscellaneous structures such as dug-outs, sanitary facilities, boiler and utility rooms, ticket booths, as well as a restaurant, the Stadium Club, limited to use by holders of box seats. There are numerous facilities for the sale of food and drink to the patrons.
The structure is equipped with two freight elevators and a passenger elevator restricted in its use to members and guests of the Stadium Club. Access to seats for the general public is by means of ramps.
Petitioner’s real estate expert appraised the basic land unit value at $3 per square foot, to which he added an over-all mere *754 ment of 20%. The building appraiser for the petitioner valued the Yankee Stadium as a specialty property based on its reproduction cost less' accrued physical depreciation and functional obsolescence.
The petitioner’s real estate expert adopted the building appraiser’s valuation of reproduction cost but added to the accrued physical depreciation and functional obsolescence a factor of economic obsolescence (12% of reproduction cost for the first five years,-and an unspecified percentage for the sixth and seventh years which mathematically the court finds to be 16% and 12% respectively).
The city submits a basic land unit of $3.50 per square foot. Its appraised land area includes an increment of 35%. The city denominated Yankee Stadium as a special purpose use improvement and its building expert also ascertained value on the basis of reproduction cost less depreciation. The city’s real estate expert adopted this approach to valuation but provided no factor for economic obsolescence.
The court turns first to the question of establishing the land value.
In its consideration of the increments that the subject property enjoys, the court discarded any increment by the petitioner for corner and multiple frontage because of the nature of the plot.
These increments, particularly the corner increment, have found their way into the appraisal technique because appraisers believe that a greater advantage attaches to a corner lot, and therefore it has a higher value. The reason given is that it enjoys accessibility to increased pedestrian and automobile traffic, increased light and air, greater display and advertising space and greater facility of ingress and egress. They find corner influence has its greatest effect in high volume retail areas and decreases in value as the use of the land descends to industrial areas.
None of these advantages appertain to the subject land. The parcel, moreover, is zoned 08-3 and is basically a manufacturing area in close proximity to the old Bronx Terminal Market, a refrigerating plant and railroa,d shops.
The court believes that the evidence in the record supports a plottage increment of 20% for this parcel (see People ex rel. 277 Park Ave. Corp. y.Miller, N. Y. L. J., Sept. 16,1939, p. 668, col. 2, affd. 259 App. Div. 869, affd. 285 N. Y. 621).
Sales were put in evidence by both sides. The petitioner submitted five sales with an indicated square foot value ranging *755 from $2.01 to $3.58 a square foot. The city submitted three sales with an indicated square foot value ranging from $4.75 to $5.15.
Based on a comparison of- the subject property with all the sales in the record, the court finds the fair and reasonable basic land unit to be $3.40 per square foot, thereby reaching a total land assessment at $1,715,157. Since this valuation exceeds the assessment for all the years under review the land assessment. is rounded out at $1,700,000 and is confirmed in that amount.
The court turns next to the question of establishing the value of the improvement.
Petitioner introduced evidence of income and expenses in the operation of the stadium showing a decline in income during the years under review. In the reproduction cost less depreciation approach to valuation, income of a business operated on the premises is no evidence of the value of the real estate. Some evidence of its profit and loss experience is competent on the question of the adequacy of the improvement and whether cost of reproduction may be added to the land. In the instant ease the evidence does show a decline of income during the years under review.
Evidence was introduced by the petitioner that the city sought to acquire the land and improvements in and about Yankee Stadium and obtained authorization from New York State to lease the stadium to the Yankees. The legislation (Chapter 986 of the Laws of 1971) states in part: “ the fifty year old stadium is now physically and functionally obsolescent and does not provide facilities comparable to those of modern stadiums; and that unless the stadium and its supporting facilities are substantially renovated and modernized it is likely that the New York Yankees, the New York Giants and other stadium users will transfer to a location outside the state and city. ’ ’ The New York City Board of Estimate has authorized the city to execute a lease to expend a sum of $21,000,000 to rehabilitate the stadium.
The city maintains, in this trial, that it is the lack of a winning baseball team that is responsible for the decline in receipts and points to the fact that the stadium is sold out for each of the Giant football games.
After study and analysis of the evidence adduced at the trial and after an extended view of the property, the court is of- the opinion that the proper method of evaluating Yankee Stadium is by the reproduction cost less depreciation (see Matter of City of New York [Coogan], 152 N. Y. L. J., Nov. 25,1964, p. 16, col. 1, mod. 26 A D 2d 372, mod. 20 N Y 2d 618).
*756 The evidence shows a great disparity in the reproduction cost appraisals of the petitioner and those of the city. This arises in part from the use by the experts of different sets of plans. From the evidence adduced, the court is of the opinion that the “ Osborn ” plans, introduced by the petitioner, were more reliable for the determination of items and quantities of construction materials. The court, moreover, does not include in its own calculation such items as the public address system, scoreboards, floodlights, lockers, signs and flagpoles. Particularly it excluded the cost estimate of seating. These seats are personalty and also are not included among the taxable improvements (see People ex rel. National Exhibition Co. v. Miller, 263 App. Div. 799).
Upon due consideration given to all the evidence including the testimony of the experts, the court finds the figure of reproduction costs to be in the sum of :
$ 8,650,000 for the tax year 1965/66
9.255.000 for the tax year 1966/67
9.861.000 for the tax year 1967/68
10.380.000 for the tax year 1968/69
10.899.000 for the tax year 1969/70
11.331.000 for the tax year 1970/71
11.764.000 for the tax year 1971/72
In arriving at its determination of the proper rate of depreciation, the court considered elements of physical depreciation, functional obsolescence, and economic obsolescence. The petitioner adopted a rate of 64% to 88% for physical depreciation and functional obsolescence, plus a factor for economic obsolescence as stated above (p. 2). The city used a rate of depreciation ranging from 71% to 81% with no provision for economic obsolescence.
Economic obsolescence has been defined as “ loss of value brought about by conditions that environ a structure, such as a declining location or the downgrading of a neighborhood resulting in reduced business volume ” (see Matter of Putnam Theatrical Corp. v. Gingold, 16 A D 2d 413, 417).
Petitioner contends that the stadium ‘ * would not be reproduced ’ ’, that the obvious inadequacy of parking facilities and the deterioration of neighborhood conditions contribute to the decline in attendance at Yankee games and that an allowance should be made for the resulting economic obsolescence.
The city holds that the problems of the petitioner are the result of its failure to provide an attractive baseball team rather *757 than inadequate parking space and neighborhood conditions and thus no allowance should be made for economic obsolescence.
The petitioner’s evidence, however, after adding a factor of economic obsolescence of 12% on the first five years under review to the functional and structural obsolescence, goes beyond this and finds that the stadium has no value at all for the last two tax years under review, an opinion with which the court disagrees. If the court did agree with such opinion, then reproduction cost less depreciation for the last two years would not be the proper method of valuation. There would then be an “ absence of a showing that the property would reasonably be expected to be reproduced ” (see Chiloway Charcoal v. State of New York, 28 N Y 2d 914,915).
The court has no magic formula by which it can measure the precise amount of economic obsolescence. After consideration, of all the factors in the record, plus the benefit of a detailed view of the premises, the court fixes its rates of depreciation (including physical depreciation, functional obsolescence, and economic obsolescence) as follows:

After weighing the evidence in this proceeding, the court finds the proper values to be
SUMMARY

*758