**DELAWARE RACING ASSOCIATION, a corporation of the State of Delaware, Appellant,**

v.

**George A. McMAHON et al., Appellees.**

Superior Court of Delaware, New Castle.

April 26, 1974.

Leonard S. Togman, of Potter, Anderson & Corroon, Wilmington, for appellant.

Joseph M. Bernstein, Wilmington, for appellees.

OPINION

TEASE, Judge.

This is an appeal by a property owner from a decision of the New Castle County

Board of Assessment Review under the provisions of 9 Del.C. Sec. 8313. The appellant, Delaware Racing Association ("the Association"), is the owner in fee of an improved parcel of real estate comprising approximately 388 acres upon which is located the plant of Delaware Park, a thoroughbred racetrack. As part of a recent County reassessment the parcel in question was given an assessed valuation of $9,505,500.00, the land being assessed at $4,145,300.00 and the improvements at $5,360,200.00. The Association appealed the assessment to the New Castle County Board of Assessment Review ("the Board"), the appellee herein. After a hearing on the appeal the original assessment was affirmed and the Association filed this appeal seeking a review of the Board's decision.

Delaware Park has been in operation as a thoroughbred racetrack since 1937 and for the past several years, primarily because of increased competition from neighboring racetracks, the Association has been losing money, according to financial statements prepared using regularly accepted accounting principals and practices.

The Board, in making its decision in this matter, relied upon the property record cards and the Association relied upon an appraisal of its property prepared by Patterson-Schwartz & Associates, Inc. In that appraisal (the general expertise of Patterson-Schwartz in such matters is conceded by the Board) Patterson-Schwartz concluded that because of the many factors cited in its report and appearing in its testimony, including the surrounding neighborhood and its characteristics, the soil conditions, and adjacent and contiguous land usage, "it is apparent, for economic reasons, that the racetrack operation does not constitute a highest and best use for the property". The appraiser concluded and testified that the "highest and best use of the subject property is as a Diversified Planned Unit Development" to include varying densities of residential, light industrial, office, research and commercial uses.

The appraiser further concluded that, in consideration of the many factors cited in its report and testimony, the market value of the property in question for such residential use was the sum of $3,800.00 per acre less the demolition costs of all improvements presently existing thereon, for a total market value for the 388 acres in question of $933,904.00.

The issue thus raised before this Court, in its simplest form, is the determination of the proper valuation for property tax purposes of racetrack facilities worth several millions of dollars as a racetrack and less than one million dollars as a residential site.

In Delaware it has been well settled that a property tax assessment is accorded a presumption of accuracy and correctness and that the burden is on the property owner to present evidence of overvaluation, if it is claimed to exist.

9 Del.C. Sec. 8313(c) provides in part that:

"The decision of the Board or Department shall be *prima facie correct* and the burden of proof shall be on the appellant to show that the Board or Department acted contrary to law, fraudulently, arbitrarily or capriciously." (Emphasis mine)

The Delaware Supreme Court in 1965, in Fitzsimmons v. McCorkle, 214 A.2d 334, at p. 337, said:

"The burden of presenting evidence to meet the prima facie case and to rebut the presumption (of correctness) rests upon the property owner. To fulfill the purpose; the owner's evidence must not only be competent; it must be sufficient to show a substantial overvaluation."

The Association rests its case upon the Patterson-Schwartz report, and the report builds its case, of course, upon the market

value of the parcel in question, based upon what it perceives to be the highest and best use for the property in question.

█ The parties agree that the rule of law was correctly stated in Delaware in *Fitzsimmons* where, after setting forth the commonly accepted definition of "market value", the Court stated that the market value of property will be fixed "assuming the highest, best and most valuable use for which the property is reasonably adaptable and available."

The Association's opinion as to the market value of the property therefore rests entirely on the premise that the "highest and best use" of the property in question is not as a thoroughbred racetrack; that therefore the property should not be valued for tax purposes based on what it is *now* "adaptable and available" for, but instead should be valued on the basis of the appraiser's determination of the most desirable use of the property at some future date. Since, according to the appraiser, the racetrack operation is incompatible with the highest and best use of the property, the value of the present improvements upon the property, consisting of a grandstand, club house, stables, barns, and other improvements, must not only be totally disregarded but a deduction from the total market value of the property for residential purposes must be made to account for the cost of demolishing these improvements.

The Association's conclusion that the racetrack operation does not constitute the highest and best use of the property is grounded solely on the allegation that the operation of the track has caused financial losses for the past several years. It is at this point in the building of the Association's argument that the chain of logic must rupture. In this kind of situation the profitability (or lack thereof) of the operation of the racetrack has nothing whatsoever to do with the valuation of the property upon which the operation is conducted. All of the buildings and improvements

which presently comprise Delaware Park were specifically designed and are "adaptable" to only one purpose—the conduct of the racing of animals for the enjoyment of the public. The income derived by the Association is attributable to the business that is carried on in and around these structures and none of the sources of income of the Association is in any way related to the value of the raw land or the structures. All such sources of income are attributable solely to the nature of the business carried on in and around those structures.

In *Fitzsimmons* the Delaware Supreme Court, when speaking of the most valuable use for which the property "is reasonably adaptable and available", was not referring to some speculative future use of raw land which contemplated the destruction of valuable improvements existing on that land; it was talking about the most valuable use for which the property was *then* reasonably adaptable and available. Rather than continuing to conduct an operation that has been losing money for several years, if the Association should elect to close its operation and demolish and remove all of its buildings, because continuing to lose large sums of money may be an unwise business proposition, then its argument for a reduction would surely prevail. However, it is presently used for the racing of thoroughbred horses, it has long been used for such purpose, and that is the only use to which it is presently adaptable and available. That, therefore, is its highest and best use in its present condition.

Properties of the type of which Delaware Park is an example, where it is not the land but the business conducted upon the land that produces income, have been regarded by the Courts as "specialty properties" for property tax purposes. People ex rel. Hotel Paramount Corporation v. Chambers, 298 N.Y. 372, 83 N.E.2d 839 (1949); Westbury Drive-In v. Board of Assessors, 70 Misc.2d 1077, 335 N.Y.S.2d 361. Likewise, racetrack properties have generally been placed in this "specialty" category. People ex rel. Metropolitan

Jockey Club v. Mills, 190 Misc. 277, 72 N. Y.S.2d 757 (1947), aff'd 273 App.Div. 971, 79 N.Y.S.2d 304; Metropolitan Dade County v. Tropical Park Inc., 231 So.2d 243 (1970); Homer v. Hialeah Race Course Inc., 249 So.2d 491 (1970).

In each of the above cases, the court held that it was improper to value racetrack property based on the income that it generates. As the Court stated in People ex rel. Metropolitan Jockey Club v. Mills, *supra*, 72 N.Y.S.2d at p. 762:

"Since the advent of pari-mutuel betting, large throngs attend the racing meets and vast sums are bet on the races. Perhaps there is not a day on which at least $1,000,000 is not wagered, and on many days the mutuel turn-over reaches figure of two, three or even four million dollars. Fifteen per cent of the amount bet is deducted and distributed as follows: 6% to the State of New York as taxes; 5% to the City of New York as taxes; 4% to the relator. Naturally this produces large revenues, and, unquestionably, even after deducting expenses, relator makes a substantial profit. But it is the racing and the betting which produces this money, rather than the land. Unlike an office building or an apartment house, the relator's land is not used by the tenants for the space itself."

Utter chaos would be created in the tax and assessment laws if the Association's definition of highest and best use, based solely on unprofitability and the destruction of valuable improvements, were to prevail. Furthermore, a logical extension of this argument would be that if Delaware Park were now a profitable operation as a result, for instance, of the fortuitous removal of competition, a change in the distribution of the handle at the track, or any one of a vast number of economic factors, the value of the land and buildings comprising the racetrack would immediately and substantially increase. This proposition has been uniformly rejected by the Courts. People ex rel. Metropolitan Jock-

ey Club v. Mills, *supra*; Metropolitan Dade County v. Tropical Park Inc., *supra*; Homer v. Hialeah Race Course Inc., *supra*.

■ Some Oregon decisions to the contrary, cited in the Association's brief, there are substantial and compelling reasons why a valuation theory which is tied to income has been rejected in cases involving specialty properties such as racetracks. In specialty properties, as opposed to ordinary commercial properties such as office buildings or apartments, income is derived from the business conducted on the property and not from the occupancy of the property by tenants who pay for the rental of space therein. The value for tax purposes of an office building is thus properly derived from the value of the space leased out and not by the nature of the businesses carried on in such buildings. On the contrary, in a racetrack situation, the improvements have little value except as they are used in connection with that particular business. Such improvements are uniquely suited to this one purpose and cannot readily be converted to use for another. In such situations the Courts have held that the "reproduction cost less depreciation plus land value" formula was a proper measure for determining true value for tax assessment purposes. Westbury Drive-In v. Board of Assessors, *supra*, 70 Misc.2d p. 365, 335 N. Y.S.2d 361. Such specialty property is valued for tax purposes in the actual condition in which the owner holds the land and not according to a use which does not exist except in the imagination of the owner. Aetna Life Insurance Company v. City of Newark, 10 N.J. 99, 89 A.2d 385 (1952). Real estate values that are the product of speculation in tax and assessment matters should not be considered. Board of Education of Claymont Special School District v. 13 Acres of Land (Del.Super.1957), 11 Terry 387, 131 A.2d 180, 183.

■ A property owner is and should be assessed on the basis of what improvements have actually been erected, not on what could have been erected, despite the

fact that the latter might be more economical or financially rewarding. The soundness of this philosophy almost admits of no argument. To the extent that the Oregon cases cited by the Association, whatever they mean, are inconsistent with this philosophy they must be rejected. In ascertaining true value for assessment purposes it is immaterial that the buildings do not utilize the land to develop the highest possible commercial income. Joseph E. Seagram & Sons v. Tax Commissioner, 18 A. D.2d 109, 238 N.Y.S.2d 228 (1963).

As the Delaware Supreme Court stated in *Fitzsimmons,* the owner's evidence to rebut the presumption of correctness and prima facie case of the Board, created by the original assessment, must be "competent" and "sufficient". For the reasons set out herein, the Association's evidence supporting the overvaluation was neither competent nor sufficient because it was based on an improper premise, that the highest and best use of the land in question requires the destruction of millions of dollars worth of existing improvements.

The Association points out that the Superior Court letter opinion of March 14, 1974, in Lukens v. New Castle County, No. 5220 C.A., 1973, and Cochrane v. New Castle County, No. 5221 C.A., 1973, concerns issues common to the case at Bar. I agree —in that opinion the Judge cited *Fitzsimmons* with obvious approval but went on to find that competent and sufficient evidence was presented by the owners to rebut the prima facie case established by the assessment records.

In its brief the Association also argues that the fair market value of the stock of the Association, as shown by the evidence is "only 2.3 million dollars" and that this demonstrates "the absurdity" of the Board's assessment in excess of 9.5 million dollars. I think the Association is guilty of utilizing a non sequitur. It is common knowledge that market value of corporate stock often has little relation to the value of the corporation's assets. Many stocks are traded daily for sums less than and in excess of their value as computed upon a fair market sale of all corporate assets.

For the reasons set out herein I adopt, by whatever name it may be called, the approach to these kinds of assessment problems that reaches the only sound and logical result, that property must be assessed according to the highest and best use for which the property is then adaptable and available, disregarding all speculations and possible uses which would require alteration of its essential character and the essential character of the improvements thereon.

Accordingly, the decision of the Board of Assessment Review of the Department of Finance of New Castle County is affirmed.

Note: The Association indicates in its brief that in spite of the assessed valuation of $9,505,500.00, it received a tax bill for the fiscal year beginning July 1, 1973, after the filing of its opening brief, which stated that the assessed valuation of the parcel in question is $9,608,100.00. If counsel cannot reach a prompt and satisfactory solution to this apparent discrepancy the Court will consider a further application. For that sole purpose the Court retains jurisdiction. For all other purposes the filing of this opinion is a final order.