**DELAWARE RACING ASSOCIATION, a corporation of the State of Delaware, Appellant below, Appellant,**

v.

**George A. McMAHON et al., Appellees below, Appellees.**

Supreme Court of Delaware.

Argued Jan. 17, 1975.

Decided June 20, 1975.

Leonard S. Togman, James F. Burnett, Wilmington, for appellant below, appellant.

Joseph M. Bernstein, New Castle County Dept. of Law, Wilmington, for appellees below, appellees.

Before McNEILLY, Justice, QUILLEN, Chancellor, and STIFTEL, Judge.

QUILLEN, Chancellor:

This is an appeal from an order of the Superior Court affirming a decision of the Board of Assessment Review of the Department of Finance of New Castle County (hereinafter the "Board").

Appellant, Delaware Racing Association (hereinafter the "Association"), a corporation of the State of Delaware, is the owner in fee simple of an improved parcel of land in New Castle County, consisting of 388.42 acres, on which is located Delaware Park, a thoroughbred racetrack since 1937.

As part of a countywide reassessment for fiscal year 1974, New Castle County gave the parcel in question an assessment valuation of $9,608,100, $4,145,300 for the land and $5,462,800 for the improvements. The Association filed an appeal with the Board seeking to have the assessment reduced to $933,904.

In support of its appeal before the Board, the Association presented an appraisal of its property prepared by the firm of Patterson-Schwartz & Associates, Inc., giving that firm's opinion of the fair market value of the operating assets of the Association, including, but not limited to, the real estate subject to the appeal.

The Association's expert concluded that the highest and best use of the land was not as a racetrack, but as a Diversified Planned Unit Development including varying densities of residential, light industrial, office, research and commercial uses. This conclusion was founded largely on economic factors and particularly the fact that the racetrack has been losing money in recent years. Based on a correlation with six bulk sale comparables, the appraisers concluded that certain land of the Association, including the parcel in question, had a value of $3,800 per acre. From a total acreage value, the appraisers deducted the cost ($185,000) of razing existing improvements (i.e. the racetrack) since

these were deemed inconsistent with the highest and best use of the land. Finally, the appraisers reduced the value obtained on pro rata acreage basis to the 388.42 acres in question and obtained a market value figure of $1,334,148. Since New Castle County assesses real estate for tax purposes at only 70% of market value, the parcel in question was valued for tax purposes at $933,904.[1]

The Board admitted the appraisal into evidence. While the County did not formally present any evidence, the record certified includes copies of "property record cards" on which the assessment was based. The parties stipulated in the Superior Court that these property record cards "were relied on by the Board of Assessment in making its decision although these cards were not made available to Appellant for inspection at the time of the hearing, nor at any other time, nor were the cards introduced or discussed at the hearing." The property record cards give a conclusionary, but detailed, breakdown of values reached during the reassessment and constitute more than what would generally be considered a mere assessment record or assessment roll.

The Board denied the Association's appeal and the Superior Court affirmed the decision of the Board. *Delaware Racing Association v. McMahon*, Del.Super., 320 A.2d 758 (1974). The Superior Court opinion rests on the premise that the property in question should be valued as "specialty property" which does exist rather than some hypothetical use which does not exist. The Court relied on the fact that the property in question is not "reasonably adaptable and available" for a use other than as a racetrack. *Fitzsimmons v. McCorkle*, Del.Supr., 214 A.2d 334 (1965). Therefore the Superior Court concluded that the "Association's evidence supporting the overvaluation was neither competent nor sufficient because it was based on an

---

1. It appears to us that a minor mathematical error was made (page 34 of the Appellant's Appendix), but we will use the figures in the appraisal since the discrepancy is small.

improper premise, that the highest and best use of the land in question requires the destruction of millions of dollars worth of existing improvements." *Delaware Racing Association v. McMahon, supra,* at 320 A. 2d 762.

It appears to us that the case divides into two general legal questions, the substantive question of the method of evaluation and the procedural question of a fair hearing. We will therefore discuss them together due to their interrelation.

A taxpayer aggrieved by the assessment of his property has the right to bring an appeal before the Board. *9 Del. C.,* §§ 1308, 8312, 8313 (now appearing in the 1974 Revision of the Code as §§ 1305, 8311, 8312). On such an appeal to the Board, there is a presumption of accuracy in favor of the assessment. The Appellant has the right to introduce relevant evidence. *9 Del.C.,* § 8313(b).[2] Such evidence can rebut the presumption. Once competent evidence is introduced, which is sufficient to show a substantial overvaluation in the assessment, the presumption ceases to exist and the Board must be reversed if it relies solely on the assessment record in affirming the assessment. *Fitzsimmons v. McCorkle, supra.*

As noted, the Superior Court upheld the Board's decision because the Appellant's evidence was not competent. Presumably, under the *Fitzsimmons* case, the Superior Court therefore found that the presumption of the assessment record was not rebutted and therefore should stand as correct.

While we agree with the major legal conclusion of the Superior Court, i.e., this

racetrack should be valued as a specialty, we nonetheless have difficulty with the result reached in the case.

It was certainly error for the Board to rely on the property record cards which were not part of the evidence. On the basis of the record before us, including the stipulation, we can only conclude the Board acted arbitrarily in so relying. It could be argued, however, that the Superior Court's rationale for the result makes the error harmless since the Appellant's evidence was discarded.

Such a conclusion, however, is inaccurate, even if the Superior Court's legal premise is accepted. The Superior Court, citing *Westbury Drive-In v. Board of Assessors,* N.Y.Supr., 70 Misc.2d 1077, 335 N.Y.S.2d 361 (1972), said that "the 'reproduction cost less depreciation plus land value' formula was a proper measure for determining true value [of specialty properties] for tax assessment purposes." See opinion below at 320 A.2d 761. At the very least, excluding the cost of demolition, the Appellant's evidence rebutted the assessment by showing a gross overvaluation of the land even under a specialty approach to valuation. Indeed, at oral argument, the County hardly disputed this point. Thus, a reversal to some degree is required.

As to the substantive question of the method of evaluation, the opinion of the Superior Court contains a well considered and thorough treatment of the case. We agree with the Superior Court that, in determining "its true value in money" un-

---

2. It is possible to read this section to limit the evidence before the Board to that of the Appellant, but we reject such a reading. In our judgment the direction to "sit and hear all appeals" necessarily implies the County as well can present evidence. This conclusion is reinforced by the judicial review provision, *9 Del.C.,* § 8313(c), which provides for an appeal "on the record" with only a discretion in the Superior Court to "permit the appellant or the Board or De-

partment to present any new or different evidence pertinent to the matter." The Board is to be overruled only if it acted contrary to law, fraudulently, arbitrarily or capriciously. We feel the language in § 8313(b), to the effect that the Board "shall permit the introduction of all relevant evidence, including the testimony of witnesses, presented by the appellant", is specified to insure the hearing rights of taxpayers and not to limit a full and fair hearing.

der 9 *Del.C.*, § 8307 (§ 8306 in the 1974 Revised Code), real property should be valued for tax purposes at the highest and best use for which the property is reasonably adaptable and available. *Fitzsimmons v. McCorkle, supra.* In the case of Delaware Park, this means a racetrack and not some speculative, imaginary use created in the mind of an expert, who figuratively demolishes a multimillion dollar plant and values the raw land for a Diversified Planned Unit Development, including as a deduction the cost of demolition. We do not believe the latter approach by this taxpayer is realistic and we do not believe the record shows that Delaware Park is reasonably adaptable and available for such a purpose. Indeed, improvements are constantly being made to Delaware Park which demonstrate a continuing commitment to its use as a racetrack.[3]

■ With credit to the analysis by the Court below at 320 A.2d 761, we note that enduring specialty property is generally valued for tax purposes in the actual condition in which the owner holds the land and not according to a use which does not exist or is not contemplated except in the speculative imagination of an expert. See the especially strong view of New Jersey law on this point: *Aetna Life Insurance Company v. City of Newark*, 10 N.J. 99, 89 A.2d 385 (1952); *State v. State Board of Tax Appeals*, 134 N.J.L. 34, 45 A.2d 599 (1946). The latter case reads at 45 A.2d 604:

"We find no occasion to enter into the realm of theorization, imagination and supposition. To do so would negate the fact that taxation is indeed a complex, living reality. And its solution is sufficiently complicated without making it more so."

■ But, notwithstanding our basic agreement with the Superior Court on the main legal point, we believe the whole case should be returned to the Board for an entire new hearing. In addition to the reasons already cited, we think the overall procedural development of this case as well as a failure to directly apply appropriate substantive legal standards make a new hearing mandatory in the interest of justice.

While it may be generally true that a litigant must present all the evidence in support of all his theories, the result of declaring Appellant's evidence "not competent" for the first time at the judicial review level creates an unfairness under the peculiar circumstances present here.

The Board, by admitting the evidence without reservation, implied that the evidence was competent. The Appellant, by gaining the admission of the evidence, at least was justified in assuming the evidence was relevant and that its theory of the case was before the Board as an alternative. Under its theory of the case, evidence of a substantial overvaluation has been provided. With no counter evidence forthcoming, the Appellant was justified in believing it had carried the day under the *Fitzsimmons* case. There was no competing evidence on any legal premise. The only legal theory in evidence was the hypothetical highest and best use theory presented by the Appellant.

The action of the Superior Court, by its post-hearing legal objection to the evidence the Board had admitted, and its reinstatement of the presumption of accuracy of the assessment, just as if there had been no hearing, makes us question whether the Appellant really had a fair hearing according to its statutory right to be heard. *Pany of Delaware, Inc. v. Carroll*, Del. Super., 316 A.2d 562 (1972). The Court in effect took a record which contained the Appellant's legal premise as the sole possibility and discarded that premise and thus negated the entire hearing ab initio after

3. This is not a case where the taxpayer is gaining a tax windfall by failing to devote his property to its reasonably adaptable highest and best use. That situation may cause other problems not present here.

the fact. The Appellant did not even have the opportunity to relate its evidence to the specialty theory of evaluation.

On the substantive question, it is not sufficient merely to determine that the property should be valued as specialty property. It is necessary to go one step further and define what the implications of the standard are. At the risk of some repetition, we will try to delineate the substantive standards applicable to this case as we see them.

■ The law declares that property subject to assessment must be valued at its "true value in money". This phrase has been said to be synonymous with actual worth or fair market value. See *Council of Newark v. Claringbold,* Del.Super., 5 Boyce 133, 90 A. 1130 (1914), aff'd, Del. Supr., 5 Boyce 507, 94 A. 1102 (1915). Where no ready and willing purchasers may be unearthed due to the peculiar nature of the property, an actual market price is unattainable. In such instances other tests of value may be applied. *People ex rel. Metropolitan Jockey Club v. Mills,* N.Y.Supr., 190 Misc. 277, 72 N.Y.S. 2d 757 (1947), aff'd, N.Y.Supr.App.Div., 273 App.Div. 971, 79 N.Y.S.2d 304 (1948).

■ One guide to a sound appraisal value is the capitalization of the fair rental income of the property. *Westbury Drive-In v. Board of Assessors,* N.Y.Supr., 70 Misc.2d 1077, 335 N.Y.S.2d 361, 366 (1972), aff'd, N.Y.Supr.App.Div., 45 A.D. 2d 821, 356 N.Y.S.2d 1017 (1974). Where, however, the profits stem, not from the use of the land, i.e. rent, but from the successful operation of a business which happens to be situate on that land, the capitalization of business income is not generally appropriate.[4] *People ex rel. Metropolitan Jockey Club v. Mills, supra; Metropolitan Dade County v. Tropical Park, Inc.,* Fla. App., 231 So.2d 243 (1970); *Homer v. Hialeah Race Course, Inc.,* Fla.App., 249 So.

2d 491 (1970); see Bonbright, *Valuation of Property,* Vol. 1, p. 217 (1937).

The New York courts have developed the appraisal technique that values "specialty" properties by valuing the land and then adding the reproduction cost of the improvements on that land less depreciation. *Westbury Drive-In v. Board of Assessors, supra; People ex rel. Hotel Paramount Corp. v. Chambers,* N.Y.Ct. of App., 298 N.Y. 372, 83 N.E.2d 839, 840 (1949). Delaware has approved the reproduction cost less depreciation method in a series of cases involving just compensation for property taken by condemnation where no ready market for the property was available. *0.744 of an Acre of Land v. State ex rel. State Highway Department,* Del.Supr., 251 A.2d 341 (1969); *Wilmington Housing Authority v. Greater St. John Baptist Church,* Del.Supr., 291 A.2d 282 (1972); *Brennan v. Black,* Del.Supr., 34 Del.Ch. 380, 104 A.2d 777, 794 (1954). See also *State ex rel. State Highway Department v. Improved Parcel of Land,* Del.Super., 188 A.2d 513, 516–517 (1963). Under this method the land and structural improvements are to be valued separately. *0.744 of an Acre of Land v. State ex rel. State Highway Department, supra; Haines v. Leonard L. Farber Company,* Fla.App., 199 So.2d 311 (1967); *Metropolitan Dade County v. Tropical Park, Inc., supra;* 28 *Del.Laws,* Ch. 121, Sec. 8. It follows that the property owning taxpayer should be allowed to contest each separately as well and the County should have to bear its burden in meeting any separate attack in accordance with the *Fitzsimmons* case.

Examining the valuation of the land first, we note that the New York courts have held that the value of land should be estimated disregarding the present improvements on the property. *Westbury Drive-In v. Board of Assessors, supra.* The most dependable indicia of value is derived from current sales of comparable va-

---

4. Of course, a profitable business conducted on the land can affect the fair market price between a willing buyer and willing seller. *Council of Newark v. Claringbold, supra.*

cant land. *Id.,* at 335 N.Y.S. 364 citing Friedman, *Encyclopedia of Real Estate Appraising,* pp. 52, 261–262.

As has been noted, the record made by the Association before the Board presents a strong case for a valuation of the land that is substantially lower than the assessment valuation of $4,145,300 on the rolls. The Association's expert compiled a list of similar properties sold in recent years in the same vicinity as the racetrack and then applied the per acre price to the plot of land presently before the Court. There has been no challenge raised to the appropriateness of the comparables relied upon by the Appellant. The County failed to submit any evidence in rebuttal, possibly in part due to the fact that a separate appeal as to land alone was not readily apparent from the procedure.

It is clear that, absent other circumstances, the owner's evidence being competent and sufficient, it would normally rebut the presumption of accuracy and overcome the prima facie case made by the assessment record as to the land.

But, as to the structures, the racetrack is clearly not reasonably adaptable and available for use in any way other than as a racetrack. As we have concluded above, under the circumstances here present, the appraisal must be made based on the structures that are actually erected.

While the Appellant's contentions that the economic losses sustained in the case at bar deprive the racetrack for tax purposes of its status as a racetrack are not convincing, they do raise other problems. Evidence of economic decline may be significant, even in specialty valuation. The valuation method of reproduction cost less physical depreciation presumes that the structural improvements enhance the value of the land. The New York Courts have realistically adopted a flexible definition of the term "depreciation". Depreciation has been held to include: physical wear and tear occasioned by the elements; function-al obsolescence by reason of inadequate design and deficiencies in the property itself for the intended purpose; and economic obsolescence by way of the conditions that environ a structure. *Application of Putnam Theatrical Corporation,* N.Y.Supr. App.Div., 16 A.D.2d 413, 228 N.Y.S.2d 93 (1962); *New York Yankees, Inc. v. Tax Comm. of City of N. Y.,* N.Y.Supr., 74 Misc.2d 752, 345 N.Y.S.2d 858 (1973).

Chief Justice Wolcott in *0.744 of an Acre of Land v. State ex rel. State Highway Department, supra,* observed that the cost of reproduction less depreciation method is received as evidence, not as the total measure of value, but merely as one of many circumstances which go to the fixing of a figure that will reasonably approximate the fair market value of the property. Judge Bifferato in *Moskowitz v. Mayor and Council of Wilmington,* 941 C.A. 1960 and 747 C.A.1961 (Super.Ct., 1974) observed that "all elements entering into the value of property are relevant and must be considered by the assessors in determining value." He added: "[W]here other factors materially affecting the value of property are properly before the Board in a tax assessment appeal, it is error for the reviewing Board to ignore such factors when called upon to determine whether or not there has been an overvaluation." *Brennan v. Black, supra,* at 104 A.2d 794, noted that the reproduction cost less depreciation value must be "corrected so far as possible by other pertinent factors." The Supplemental Information form issued by the Board states clearly that the Board will consider the "economic factors as well as physical aspects of the property."

It is clear that where the business operated on a parcel of land is generating a reasonable return on investment the improvements on that land will be deemed suitable to the site and no consideration need be taken of economic conditions. But sustained losses over a protracted period of time may indicate that the structures erected on the land are not suitable to the site

and economic obsolescence should be factored in. *New York Yankees, Inc. v. Tax Comm. of City of N. Y., supra.* The proposition is at least worthy of consideration by the trier of facts.

■ The taxpayer has shown that the racetrack has suffered annual losses averaging $125,724 for the last five years. The reasons alleged were the increased competition coming from Brandywine raceway in Delaware as well as new facilities in other states, primarily Pennsylvania. The County may view the figures quite differently, especially in light of the continued and ever increasing commitment of the facility to its current use. While it is not appropriate for this Court to evaluate the validity of this evidence insofar as it may affect the value of the property, it is clear to us now that the Board was obliged to consider these matters. Under the particular circumstances present here, the Board's failure to consider economic obsolescence is contrary to our view of the law.

We think the factors we have cited, at least cumulatively, and, in some instances, perhaps separately, amount to legal error requiring a new hearing. While some of the evidence produced by the Appellant will be applicable in a specialty valuation, the whole premise of the original hearing has been removed and it is difficult to reconstruct that hearing on another premise. Even as to land evaluation, it is possible that different factors may be considered once the specialty approach is established as the governing legal principle. There is a certain apple-orange problem even as to the land. Moreover, the County's duty to defend the land assessment is now clear.

■ It is incumbent upon the government in the exercise of its taxing authority to ensure the utmost fairness in the appraisal process. Citizens either individually or as legal corporate entities must be accorded a full and fair hearing wherein they are given full recourse to air their evidence and rebut the assessment rolls. See *Pany of Delaware, Inc. v. Carroll, supra.*

The Board's failure to clarify its own position when coupled with the belated emergence of the controlling legal doctrine in the instant appeal casts a significant doubt as to whether the essentials of fairness under the law were accorded either the Appellant or the County. Therefore, the fairest means of arriving at a fair valuation of the subject property is to remand the case to the Board with instructions to convene a full hearing allowing evidence to be heard on all issues.

The decision of the Superior Court is reversed and the case is remanded with the direction that the Board shall conduct a new hearing on all issues.