### CALDER RACE COURSE, Inc. v. OVERSTREET, et al.
#### No. 75-1200.
Circuit Court, Dade County.

March 29, 1977.

Robert J. Paterno, of Taylor, Brion, Buker & Greene, Miami, for the plaintiff.

Stuart L. Simon, County Attorney, Robert L. Krawcheck, Assist and County Attorney for the defendants.

HERBERT STETTIN, Circuit Judge.

*Final judgment:* Calder Race Course Inc. brought this action to contest the 1974 ad valorem tax assessment upon real property utilized as a thoroughbred horse racing facility and identified by Folio No. 30-1134-00-0010-8. Essentially the plaintiff asserts two grounds for relief (a) that the assessment is in excess of just valuation, and (b) that the plaintiff was denied due process in the administrative proceedings before the board of tax adjustment.

The parties presented extensive evidence and legal argument a trial, all of which have been considered by the court along with the voluminous record, including legal memoranda.

The evidence establishes that as of the taxing date, January 1 1974, Calder Race Course was a practically new facility which, in part, was still under construction. The original physical plant was completed in 1971 and consisted of a seven-story glass enclosed

completely air-conditioned and heated patron facility containing grandstand, club house, private club, press boxes, and various utility and media equipment areas. The grandstand and club house included seating, various snack and liquor bars, and closed circuit television theaters, all serviced by high speed electronically controlled elevators, and escalators. The private club included a cocktail bar and lounge, dining room and kitchen.

A second phase of construction expanding the patron facility was completed in November of 1973, approximately two months prior to the taxing date. Phase three of the expansion of the patron facility was in progress on the taxing date and completed during 1974.

In addition to the patron facility, the race course includes completely air-conditioned and heated jockey quarters, an administration building, a racing department building with press room and library, a stable area including 1,758 concrete and aluminium stalls in 86 completely fireproof buildings, 246 grooms' living quarters in 7 buildings and hundreds of fireproof feed and equipment rooms. Additionally, there is a stable kitchen, laundry room, clothing store, sundry store, chapel, detention barn, maintenance building, trailer residence, blacksmith's shop building, security building and guard house.

The main running surface at the race course consists of a synthetic surface which is not affected by rain and is free of holes and stones. Additionally, there is a turf or grass course and training or exercise track in the stable area.

The mutuel facilities include the most sophisticated computerized totalizator in the thoroughbred business. There are some 445 selling and cashier's windows. The track has one of the largest closed circuit television systems of any track in the nation.

The total land area in question is approximately 204 acres.

At the close of its fiscal year ending November 30, 1973, the plaintiff had invested approximately $26,000,000 in improvements alone of which approximately $3,000,000 represented construction in progress. This investment plus the assessed value of the land, $4,452,000 (admitted by the plaintiff as correct), results in a total of approximately $30,452,000.

The assessment upon the improvements was in the amount of $15,741,282 which, together with land value, resulted in a total assessed value of $20,193,550. The amended complaint alleges that the just valuation of the improvements is $5,981,687 which, added to the assessed value of the land, produces a total of $10,433,955.

The plaintiff did not dispute the fact that the assessed value is well supported by the *cost approach* to valuation — cost of the replacement of improvements less depreciation, plus land value — but instead asserted that the only proper approach to valuation is, the *income approach* as developed by its two appraisal witnesses Mr. David Bishop and Mr. Harry Fleming.

Mr. Fleming had appeared as the appraisal witness for the plaintiff in the administrative hearing before the special master, Mr. Delahante, who recommended a reduction of the assessment to Mr. Fleming's figure. This recommendation was subsequently rejected by the board of tax adjustment which sustained the valuation of the property appraiser, Mr. Blake. At the trial Mr. Fleming admitted that he had made a mathematical error of approximately $1,700,000 in his presentation to the special master and that his income approach valuation should be increased from $10,388,550 to $12,093,009. Mr. Bishop's income approach resulted in an indicated value of real property in the amount of $12,350,000.

The income which the plaintiff's two witnesses utilized for purposes of valuation was essentially the operating income of the race track derived from various sources including admissions, wagering, concessions (food and beverage), program sales, parking, and rental income for use of the track by Tropical Park at Calder, Inc. Utilization of the plaintiff's actual operating income was based upon the assumption that management was competent and that the lease agreement with Tropical Park at Calder, Inc. was arms-length.

It was the defendants' position that the use of the cost approach was proper, that the income approach utilized by the plaintiff was not a proper valuation approach for ad valorem tax assessment, and that even if the income approach was appropriate it was invalid as applied because of errors and the failure to add the value of non-income-producing assets.

The plaintiff has the burden of overcoming the presumption of correctness of the assessment by excluding every reasonable hypothesis of legal assessment — the cost approach, the comparable sales approach, and the income or economic approach. Aeronautical Communications Equipment, Inc. v. Metropolitan Dade County, 219 So.2d 101, (3rd D.C.A. 1969).

The Supreme Court, in Powell v. Kelly, 223 So.2d 305, held as follows —

The fixing of a valuation on property by a tax assessor for the purpose of taxation is an administrative act involving the exercise of administrative discretion, and the Court will not in general control that discretion unless

it is illegally or fraudulently exercised or extended or exerted in such manner or under such circumstances as will amount in law to a fraud. Id. at 307. See also District School Board of Lee County v. Askew, 278 So.2d 272, (Fl. 1973).

The basis for ad valorem taxation is the fair market value of real property and not the degree of success of a business conducted thereon. A race track is a *specialty property* whose income results from racing, betting and other activities; it is unlike a rental property whose income is derived from the value of the property itself, in an ascertainable rental market. Profitability is unrelated to real estate value, therefore the income approach is inappropriate to valuation.

Three Florida cases, all in the Third District Court of Appeal, have uniformly rejected the income approach to valuation of a parimutuel facility. In the first of these cases, Metropolitan Dade County v. Tropical Park, Inc., 231 So.2d 243, (3rd D.C.A. 1970) the court held as follows —

> . . . The crucial finding of the trial judge is that Tropical's property was over-valued because it operates a horse track and holds a highly valued racing permit and that *income from the operation of a business of this nature cannot be the basis for the value set for the land used.* (emphasis supplied) Id. at 245.

The holding in *Tropical Park* was followed by like holdings of the court in Hecht v. Dade County, 234 So.2d 709, (3rd D.C.A. April 1970) and Homer v. Hialeah Race Course, Inc., 249 So.2d 491, (3rd D.C.A. June 1970).

The plaintiff emphasizes the fact that the trial court in *Hecht* relied heavily upon the income approach to valuation, however, that court's opinion was independently supported by both the cost and market approaches. Most importantly, the trial court's opinion was not adopted by the appellate court, which again specifically rejected the income approach —

> . . . We have recently had occasion to consider the application of the income method of assessment to the pari-mutual race track. See Metropolitan Dade County v. Tropical Park, Inc., Fla. App. 1970, 231 So.2d 243. In that case we affirmed the holding of the trial judge that "Tropical's property was overvalued because it operates a horse race track and holds a highly valued racing permit." 231 So.2d 245. *We agreed with the trial court that income from a business of this nature cannot be the primary basis for the value of the land used.* This is true because a substantial portion of the income produced upon the real property flows from the pari-mutual license, which is separately taxed. (emphasis supplied) Id. at 710.

*Hecht* was decided by the Third District Court of Appeal in April of 1970 and any remaining question as to the propriety of using the income approach for valuing a race track was put to rest in June of 1970 when the court held —

> . . . *The question of the propriety of the income approach method of evaluation as applied to race track property has been decided by this court in the case of Metropolitan Dade County v. Tropical Park, Inc.,* Fla. App. 1970, 231 So.2d 243. Therein, we discussed the applicable principles for the determination of a valid assessment of property belonging to a business such as the one operated by the appellee herein. *The court acted properly in rejecting the income approach in the instant case.* (emphasis supplied). Homer v. Hialeah Race Course (3rd D.C.A. 1970).

The plaintiff contends that *Tropical, Hecht,* and *Hialeah* must be read as permitting, and in fact requiring, use of the income approach so long as the value of the racing permit included therein is extracted. The plaintiff's theory is that the income approach is the correct approach to valuation when it produces a value *less than* the cost approach because the value of the racing permit included therein is said to be zero. When, however, the value produced by the income approach exceeds that produced by the cost approach, the excess is said to be the permit value, all of which must be extracted, leaving the value produced by the cost approach. In effect, the plaintiff's argument is that an assessment must be based upon whatever approach *produces the lowest value.*

The court does not accept the plaintiff's contention.

First, the plaintiff's argument that its racing permit has no value but suddenly acquires value when the cost approach is exceeded, is unrealistic. This is especially so in light of evidence that shortly after the taxing date, Mr. McKnight, the majority shareholder of the plaintiff, confidentially assumed the permit value to be approximately $6,000,000. (See Harbond v. Anderson, 134 So.2d 816, (2nd D.C.A. 1961) for discussion of owner's qualification to state value of private or corporate property.)

Second, the plaintiff fails to recognize that business management factors may produce a *negative* influence upon the real property.

As additional support for its use of the income approach, the plaintiff relies upon portions of the Department of Revenue Regulations contained in the Florida Administrative Code pertaining to regulated industries. Such provisions are inapposite because, although the state does tax the plaintiff's parimutuel handle, the rate of return upon the plaintiff's property is not limited as is the case with a regulated utility. Further, the plaintiff's income from

all sources other than the parimutual handle is taxed no differently than the income of any other business.

Other provisions of the Florida Administrative Code specifically disfavor the use of non-rental income because "income derived from operation is the more likely to be influenced by managerial skills." Former Section 12b-1.106 (4) Florida Administrative Code.

Florida courts are not alone in their rejection of income from the operation of a race track as a basis for determining value.

A discussion of the decisions in other jurisdictions is contained in Delaware Racing Association v. McMahon, 320 A.2d 758, (Superior Ct. of Del. 1974) where the court considered the ad valorem tax assessment of an unprofitable thoroughbred race track —

> In this kind of situation *the profitability (or lack thereof) of the operation of the racetrack has nothing whatsoever to do with the valuation of the property upon which the operation is conducted. . . .* The income derived by the Association is attributable to the business that is carried on in and around these structures and *none of the sources of income of the Association is in any way related to the value of the raw land or the structures.* All such sources of income are attributable solely to the nature of the business carried on in and around those structures.

It is significant that the Delaware court relied upon authorities including *Tropical Park,* and *Homer,* supra, in rejecting the income approach to valuing an *unprofitable* race track —

> Properties of the type of which Delaware Park is an example, where it is not the land but the business conducted upon the land that produces income, have been regarded by the Courts as "specialty properties" for property tax purposes. People ex rel. Hotel Paramount Corporation v. Chambers, 298 N.Y. 372, 83 N.E.2d 839 (1949); Westbury Drive-In v. Board of Assessors, 70 Misc.2d 1077, 335 N.Y.S.2d 361. *Likewise, racetrack properties have generally been placed in this "specialty" category.* People ex rel. Metropolitan Jockey Club v. Mills, 190 Misc. 277, 72 N.Y.S.2d 757 (1947), aff'd 273 App. Div. 971, 79 N.Y.S.2d 304; *Metropolitan Dade County v. Tropical Park Inc.,* 231 So.2d 243 (1970); *Homer v. Hialeah Race Course, Inc.,* 249 So.2d 491 (1970). (emphasis supplied). Id. at 760.

Having rejected the income approach to value, the court further held —

> . . . In such situations the Courts have held that *the "reproduction cost less depreciation plus land value" formula was a proper measure for determining true value for tax assessment purposes.* Westbury Drive-in v. Board of Assessors, supra, 70 Misc. 2d p. 365, 335 N.Y.S.2d 361. (emphasis supplied). Id. at 761.

Upon appeal to the Supreme Court of Delaware, Delaware Racing Authority v. McMahon (1975) 340 A.2d 837, the court ordered a "reversal to some degree," id. at 840, with regard to certain procedural aspects of the case unique to Delaware law but sustained the substantive holding —

> As to the *substantive question* of the method of evaluation, the opinion of the Superior Court contains *a well considered and thorough treatment of the case.*
>
> *       *       *
>
> *Where, . . . the profits stem, not from the use of the land, i.e. rent, but from the successful operation of a business which happens to be situate on that land, the capitalization of business income is not generally appropriate. People ex rel. Metropolitan Jockey Club v. Mills, supra; Metropolitan Dade County v. Tropical Park, Inc.,* Fla. App., 231 So.2d 243 (1970); *Homer v. Hialeah Race Course, Inc.,* Fla. App. 249 So.2d 491 (1970); see Bonbright, *Valuation of Property,* Vol. 1, P. 217 (1937).
>
> The New York courts have developed the appraisal technique that *values "specialty" properties by valuing the land and then adding the reproduction cost of the improvements on that land less depreciation. Westbury Drive-In v. Board of Assessors, supra; People ex rel. Hotel Paramount Corp. v. Chambers, N.Y.Ct. of App., 298 N.Y. 372, 83 N.E. 2d 839, 840 (1949).* Delaware has approved the reproduction cost less depreciation method in a series of cases involving just compensation for property taken by condemnation where no ready market for the property was available. (emphasis supplied in text only). Id. at 842.

The plaintiff's appraisal witnesses gave considerable testimony which supports rather than departs from the rationale of the foregoing cases. When asked why income from a law or medical practice could not be utilized in an income approach to value, Mr. Bishop stated that this would be absurd because the income was not derived from the real property itself as in the case of rental property.

The plaintiff's witnesses testified that a liquor store which, like a race track, derives substantial income from a business permit, could not be valued based upon business income. Instead, it would be necessary to ascertain the economic rental of the real property alone. Neither of the plaintiff's witnesses attempted to ascertain an economic rental for Calder Race Course and the testimony of Mr. Blake indicates the scarcity of reliable market data therefor and the consequent unsuitability of race track income for such an analysis.

Even if it were proper to utilize income from the operation of a race track for purposes of valuing real property, the court, for numerous reasons, rejects the income approach as applied by the plaintiff.

The plaintiff's income statement includes both income and expenses pertaining to the utilization of the track by Tropical Park at Calder, Inc. for a portion of the year. The lease agreement is not arms-length. Mr. McKnight, the majority shareholder of the plaintiff, was the sole shareholder of Tropical Park and the terms of the lease were concluded at his insistence over the objection of Mr. Steve Calder, the minority shareholder of the plaintiff. Furthermore, the evidence shows that the plaintiff's income statement, used by its appraisers, does not reflect some $117,000 of rental income from charity days during the Tropical Park lease period, even though the plaintiff asserts that such income was in fact received.

The agreement under which an independent contractor operated race track concessions did not provide the plaintiff with income at a current market level.

Mr. Blake's testimony established that the appraisals submitted by the plaintiff utilized erroneous tax millages in arriving at capitalization rates. Further, neither of the plaintiff's appraisal witnesses performed an independent appraisal but instead based their land values upon the tax assessment. Mr. Blake's testimony demonstrated that this resulted in a distortion of the improvement values reached by the plaintiff.

Finally, Mr. Blake's testimony established that land and improvements in the stable and jockey areas of the track, having a value of some $5,000,000 to $6,000,000 produced no income and were consequently not properly reflected in the appraisals introduced by the plaintiff.

As a result of the foregoing the court finds that even if an income approach were legally permissible, the appraisals presented to the court were not a proper application of that approach.

The plaintiff contends that because the formula for determining the market value is the amount which a willing buyer would pay to a willing seller, Walter v. Schuler, 176 So.2d 81 (Fl. 1965), the plaintiff must prevail because Mr. Blake very candidly admitted that he did not personally know persons who had purchased race tracks and that he was not personally acquainted with the method which such persons used. The court does not find it is necessary for a property appraiser or other expert appraiser to have personal knowledge of the mental processes of persons who have purchased race tracks or other property being valued. Mr. Blake's qualifications and experience as an appraiser are abundantly set forth in the record and there is no question of his expertise in applying the recognized methods of appraisal.

The court cannot accept the proposition that the cost approach was inappropriate to value Calder Race Course, Inc. when, at the very time of the assessment, the plaintiff was in the process of completing the construction of the subject property.

The court finds not only that the plaintiff has failed to meet its burden of proving that the assessment cannot be supported by any reasonable hypothesis of value but that the cost approach is a valid approach which affirmatively supports the assessment. The court also observes but does not rely heavily upon, considerable corroborative evidence supporting the assessed value.

The plaintiff is a closely held corporation whose only assets are those used in conjunction with the race track. The Florida intangible tax returns of the two sole shareholders of the plaintiff set forth a just value of approximately $19.45 per share of stock. The expert testimony of Mr. Sidney Traum, C.P.A. and tax attorney, established that, based upon the sworn statements in the intangible tax returns, the value of all assets of the corporation was in the approximate amount of $26,268,000. This figure is corroborated by Mr. McKnight's confidential estimate that an appraisal would value the plaintiff's assets at approximately $25,000,000 plus racing permit value.

The court also notes, but gives very little weight to, the fact that some 210,360 shares (or 25%) of the plaintiff's stock were sold by the corporation to Mr. McKnight at $25 per share during the fiscal year ending November 30, 1973. Testimony demonstrated that based upon the sales price per share, the value of all assets of the corporation would be approximately $29,000,000.

Turning to the plaintiff's assertion that it was denied due process in the administrative proceedings, the court finds this argument without merit. No undue influence upon the board of tax adjustment has been demonstrated. Further, the board of tax adjustment was justified in rejecting the special master's recommendation for two reasons. First, the plaintiff's appraisal witness admitted making a substantial error in his presentation to the special master. Second, the master found that the taxpayer did *not* meet its burden of proving that the assessment could not be supported by any reasonable hypothesis of value.

It is therefore ordered and adjudged as follows —

1. The 1974 ad valorem tax assessment in issue in this cause is held to be valid.

2. Final judgment is granted against the plaintiff and in favor of the defendants.

3. The temporary restraining order heretofore entered in this cause is dissolved.

4. The tax collector of Dade County is authorized to issue a bill for any deficiency in taxes in this cause as provided by law.

5. The court retains jurisdiction for purposes of enforcing the provisions of this final judgment and for determining costs, which shall be assessed against the plaintiff.