**NEW CASTLE COUNTY DEPARTMENT OF FINANCE and New Castle County Board of Assessment Review, Defendants below, Appellants,**

v.

**TEACHERS INSURANCE AND ANNUITY ASSOCIATION, Substitute for Plaintiff below, Appellee.**

No. 69, 1995.

Supreme Court of Delaware.

Submitted: July 18, 1995.
Decided: Oct. 24, 1995.

---

Stephen L. Nowak, New Castle County Department of Finance, Wilmington, for Appellants.

Judith Nichols Renzulli and Richard A. Forsten of Duane, Morris & Heckscher, Wilmington, for Appellee.

Before VEASEY, C.J., HOLLAND and BERGER, JJ.

1. By Order dated April 11, 1995, Teachers Insurance and Annuity Association ("TIAA") was sub-

BERGER, Justice:

In this case, a taxpayer appealed to the New Castle County Board of Assessment Review (the "Board"), seeking a reduction in the assessed valuation of a commercial property located in Wilmington, Delaware. The Board dismissed the appeal based upon the taxpayer's failure to present competent evidence of overvaluation. The Superior Court reversed and, since the New Castle County Department of Finance (the "County") had not presented any evidence of the property's value, the Superior Court ordered that the property be reassessed at the amount urged by the taxpayer.

There are two issues to be decided on appeal to this Court: (i) whether the taxpayer's appraisal, and related testimony, which evaluated the leased value of the property, constituted competent evidence of value for purposes of a property tax assessment; and (ii) whether the Superior Court erred in setting a new assessed value for the property without hearing any evidence from the County. We hold that, in an appeal from a property tax assessment, any methods of valuation that are generally accepted in the financial community for determining the fair market value of real property constitute competent evidence that may be considered by the Board. With respect to the second issue, the Superior Court *may* hear new evidence, including evidence that was not presented by the County at the Board level, but it is not required to do so. The County never requested the opportunity to supplement the record, and we find no error in the Superior Court's decision to rely on the taxpayer's unrebutted evidence.

## I. FACTS

Excelsior Associates, L.P.[1] (the "taxpayer") filed its assessment appeal with the Board in March 1994. The property in question is a lot with a ten-story office building located at 824 Market Street, Wilmington, Delaware. The taxpayer purchased the lot in 1982 and constructed the building during the following year. The assessed value of the land and building was $19,370,500 prior

stituted for Excelsior Associates, L.P., as appellee.

to the taxpayer's appeal. In its presentation to the Board, the taxpayer argued that the assessed value of the property should be reduced to $11,300,000. In support of that argument, the taxpayer offered a 75–page appraisal prepared by Advisory & Appraisal Company ("AAC"), as well as the testimony of Earl Timmons, Jr. ("Timmons"), the Senior Vice President and Director of AAC who prepared the appraisal.

The Superior Court gave a thorough description of the appraiser's valuation methods, assumptions and adjustments. *See Excelsior Associates, L.P. v. New Castle County Department of Finance, et al.*, Del.Super., C.A. No. 94A–08–001, 1995 WL 347380, Goldstein, J. (January 31, 1995). For present purposes, it is sufficient to note only certain aspects of the appraisal. AAC appraised the market value of the leased fee estate as of July 1, 1983.[2] The appraisal defines "leased fee estate" as: "[a]n ownership interest held by a landlord with the rights of use and occupancy conveyed by lease to others. The rights of the lessor (the leased fee owner) and the leased fee are specified by contract terms contained within the lease." Appellee's Appendix, B–31.

To determine the leased fee value of the property, AAC used the three traditional valuation methods—cost, sales comparison, and income capitalization. With each valuation method, AAC used two different approaches to determine the value as of July 1, 1983. First, it considered data and economic conditions in 1983 to arrive at a 1983 value. Second, it valued the property as of January, 1994, and then trended back to a 1983 value. The values thus derived represented the fee simple fair market value as determined by each of the methodologies. AAC then adjusted the fee simple fair market value, using a 20 percent discount, to arrive at the leased fee value of the property.

Timmons testified that the deduction represented the loss in value attributable to the property's high vacancy rate. At the time of the appraisal, more than 40 percent of the office space was unoccupied. The high vacancy rate not only meant that the property's income stream was reduced, but also that the owner would be forced to incur significant "leasing up" expenses in order to obtain new tenants. AAC determined that a 20 percent discount would properly account for these adverse factors.

## II.  COMPETENT EVIDENCE OF FAIR MARKET VALUE

■■■ It is settled law that real estate tax assessments must be based on the property's true value in money, 9 *Del.C.* § 8306(a), which is the same as its fair market value. *Delaware Racing Ass'n. v. McMahon*, Del. Supr., 340 A.2d 837, 842 (1975). The recognized definition of fair market value, in this context as in others, is "the price which would be agreed upon by a willing seller and a willing buyer, under ordinary circumstances, neither party being under any compulsion to buy or sell." *Seaford Assoc. v. Bd. of Assessment Rev.*, Del.Supr., 539 A.2d 1045, 1048 (1988). The three principal valuation approaches used in determining the fair market value of real estate are: comparable sales (or market), income capitalization, and reproduction cost. *Id.* at 1048–49. Each of these methods has strengths and weaknesses. For example, the *Seaford* Court noted that the reliability of the comparable sales approach depends upon there being an adequate number of comparable properties. The capitalization of income method is the preferred method to value income-producing properties, but it is driven by numerous variables and, therefore, should be used in conjunction with another valuation method. The *Seaford* Court concluded that, "[m]arket value . . . may be determined by using any of the three recognized methods, or any combination thereof."

■ In this case, although the taxpayer advocated a leased fee value, the AAC appraisal included the fee simple value, as determined by all three traditional valuation approaches. AAC concluded that the leased fee value of the property was $11.3 million. The appraisal also estimated fee simple mar-

---

2. For uniformity, New Castle County determines all property values as of a base year, currently set at July 1, 1983. *Tatten Partners v. New Castle County*, Del.Super., 642 A.2d 1251, 1254 N. 1 (1993), *aff'd*, Del.Supr., 647 A.2d 382 (1994).

ket values of $13.5–$14.6 million. The taxpayer pointed this out to the Board and argued that, even if the Board looked only at the higher, fee simple values, the $5 million difference between AAC's fee simple values and the assessed property value was sufficient to demonstrate substantial overvaluation and thereby overcome the presumption in favor of the assessment. The Board apparently ignored this evidence.

The trial court carefully considered the appropriateness of using a leased fee value and concluded:

[U]se of actual rent (or in this case lack of any rent), as opposed to market rent, is in line with the definition of a leased fee analysis, rather than a fee simple analysis. The Court finds that the definition of "fair market value," when an assessment involves a commercial investment property is also more in line with the use of a leased fee valuation. A buyer and seller, when determining the price of an income-producing property, will be primarily interested in the income likely to be produced by the leases. In turn, the actual rents charged, as well as whether large portions of the property are unleased are certain to be taken into consideration. Therefore, the Court finds that Excelsior's use of a leased fee analysis to determine the value of the Property did not, in and of itself, cause the valuation to fail as competent evidence of substantial overvaluation of the Property.

*Excelsior Associates, L.P. v. New Castle County Department of Finance, et al., supra* at 18–19.

We agree that the taxpayer presented competent evidence of overvaluation to the Board and that it was error for the Board to dismiss the taxpayer's appeal. However, we do so without approving or disapproving the "leased fee value" approach used by AAC. As noted earlier, the statutory mandate is that real estate be assessed for tax purposes at its fair market value. In *Seaford* this Court noted the importance of accurate valuation, discussed the three principal valuation methods, and stressed the desirability of using all three valuation approaches "to the extent the circumstances of a specific property will permit." *Seaford,* 539 A.2d at 1048.

The thrust of the *Seaford* decision was that each property presents its own valuation problems and each valuation method has its own strengths and limitations. Since the goal is accurate valuation, the *Seaford* Court encouraged reliance on more than one valuation method.

■ We reaffirm that principle and conclude that it would be helpful to articulate, in general terms, what constitutes "competent evidence of valuation." In the context of corporate valuations, the so-called "Delaware Block" method of valuing stock, or a company, was replaced in 1983 with a "more liberal approach [allowing] proof of value by any techniques or methods which are generally considered acceptable in the financial community and otherwise admissible in court...." *Weinberger v. UOP, Inc.,* Del. Supr., 457 A.2d 701, 713 (1983). We hold that this same standard should apply to the determination of the fair market value of real estate.

This holding may eliminate or limit, to the extent feasible, preliminary skirmishes on the issue of whether the taxpayer's evidence constitutes competent evidence of value for purposes of overcoming the presumption that the assessed value is accurate. *See Fitzsimmons v. McCorkle,* Del.Supr., 59 Del. 94, 214 A.2d 334 (1965). If a taxpayer presents evidence of substantial overvaluation, based upon a valuation technique generally acceptable in the financial community, the Board should hear the entire appeal. The County is free to use different valuation methodologies and to present evidence and argument in support of its position that the taxpayer's valuation is unreliable or otherwise inaccurate. The Board then will be able to use its expertise to evaluate the competing methodologies; make an informed judgment as to which is more persuasive; and state the reasons for its decision.

In this case, for example, the Board should have accepted AAC's appraisal and found that the taxpayer had presented competent evidence of overvaluation. At the full hearing, if the County had presented contrary evidence, the Board could have concluded, among other things, that the County's evidence of value was more persuasive, or that

AAC's analysis should be accepted without the 20 percent adjustment used to arrive at the leased premise value.

### III. THE COUNTY'S FAILURE TO PRESENT EVIDENCE

■ At the Board hearing, the County moved to dismiss after the taxpayer presented its evidence. The County indicated to the Board that it had "information" to present, but no evidence was offered, as the Board granted the motion to dismiss. On appeal to the Superior Court, the County made no request to "present any new or different evidence" pursuant to 9 *Del.C.* § 8312. Even after the Superior Court decided in favor of the taxpayer, based upon the taxpayer's unrebutted evidence, the County did not move for reargument or for relief from the judgment. See Super.Ct.Civ.R. 59, 60. In short, the County made a tactical decision not to ask the Superior Court for the opportunity to present evidence in support of the original assessment.

Issues that are not fairly presented to the trial court will not be heard on appeal except when the interests of justice so require. Supr.Ct.R. 8.; *Wilmington Trust Company v. Conner,* Del.Supr. 415 A.2d 773, 781 (1980). The County argues that it was unable to present its evidence to the Board and that, where a record on appeal is incomplete, the Superior Court should allow additional evidence in order to reach a just decision. *Mellow v. Board of Adjustment,* Del.Super., 565 A.2d 947 (1988), *aff'd,* Del.Supr., 567 A.2d 422 (1989). This argument misses the point. The question is not whether the Superior Court should allow additional evidence, but whether the County ever requested the opportunity to present such evidence. The County offers no explanation for its decision not to request that opportunity. Moreover, the County has not made any showing that it has competent evidence in support of the assessed value or that it had that evidence at the time of the Board hearing.[3] Accordingly, we find no compelling interests of justice that

mandate an exception to the waiver doctrine embodied in Supreme Court Rule 8.

Based upon the foregoing, the judgment of the Superior Court is AFFIRMED.

---

3. Although the County commented to the Board that it had "a lot of information" to present, Appellant's Appendix A–209, no offer of proof was made to the Board and nothing has been submitted to this Court.