The STATE of Delaware, upon the relation of the Secretary of the Department of Transportation, Plaintiff,

v.

ROSEANN H. HARKINS REVOCABLE TRUST DATED OCTOBER 26, 1994; Jesse Loven and Marjorie K. Loven Collective Bank; PNC Bank, Delaware; 13.1172 Acres of Land, more or less, as a Permanent Taking; 1.1593 Acres of Land, more or less, as a Permanent Taking; 0.1769 Acre of Land, more or less, as a Temporary Construction Easement; situate in St. Georges Hundred, New Castle County, State of Delaware; and Unknown Others, Defendants.

Civil Action No. 95C–08–207–SCD.

Superior Court of Delaware,
New Castle County.

Submitted: Aug. 8, 1997.
Decided: Sept. 18, 1997.

Richard L. Abbott, Theisen, Lank, Mulford & Goldberg, P.A., Wilmington, for the Plaintiff.

Richard H. May, Young, Conaway, Stargatt & Taylor, Wilmington, for Defendants.

## OPINION

DEL PESCO, Judge.

The State of Delaware (Plaintiff) and the Roseann H. Harkins Revocable Trust, *et al.* (Defendants) find themselves embroiled in a real estate valuation dispute arising out of a condemnation action: Defendants have made a motion *in limine* to admit in evidence an appraisal of the subject property based on the subdivision development method of valuation. Plaintiff

has made a cross-motion *in limine*, requesting that the appraisal be held inadmissible as a matter of law.

After careful consideration of Delaware law and of the facts as alleged by the parties, the Court **GRANTS** the defendants' motion *in limine* and **DENIES** the plaintiff's cross-motion *in limine*.

## I.

### Summary of Disposition

The Court's decision to admit in evidence an appraisal based on the subdivision development method of valuation results from the Delaware Supreme Court's holding in *New Castle County Department of Finance v. Teachers Insurance and Annuity Association*[1], (hereinafter *Teachers Insurance*) and the uniquely compelling foundation laid by the plaintiffs.

As this decision is a departure from the position previously taken in this Court, it requires an extensive discussion of: (1) the unique facts animating this case, and (2) the new, "liberal" approach to valuing real estate espoused by the Supreme Court in *Teachers Insurance.* In light of this discussion, it should be clear that the Court is not breaking with Delaware tradition, as the State would contend, but rather is adhering to Delaware Supreme Court precedent that seeks to achieve the public policy goal of "accurate valuation" of real estate.[2]

## II.

### Facts As Alleged By The Parties

#### Overview

In an effort to facilitate intra-state transportation, the Delaware Department of Transportation (DelDOT) has embarked upon the construction of a major highway,

State Route 1 (S.R.1), which will extend from I–95 at Route 7, south to Dover. DelDOT found it necessary to engage in a partial taking of land owned by the Roseann H. Harkins Revocable Trust. The Trust owns approximately 106 acres of land located on the west side of the DuPont Highway (Route 13), north of the town of Odessa, in New Castle County, Delaware. The State condemned about 13 acres of this land for the purpose of relocating Marl Pit Road and constructing an elevated roadway for S.R. 1. The State maintains that just compensation for this condemnation is $196,000. Defendants, relying upon an appraisal that employs the subdivision development method of valuation, believe that just compensation for the partial taking is $551,200.

### Purchase of the Property and Initial Plans for Its Development

In 1981, Roseann H. Harkins and her late husband, I.J. Harkins, purchased approximately 56 acres of land on the west side of the DuPont Highway, north of Odessa. The Harkins believed that the area surrounding Odessa would "become a growth area for residential development and that the property would be suitable for residential housing development if additional adjoining acreage" could be obtained. (Harkins Aff. at ¶ 6.) In 1986, the Harkins acquired 50 acres of land adjoining their 1981 acquisition.[3]

In October 1987, the Harkins retained the services of a civil engineering firm, Tetra Tech Richardson and received the New Castle County Department of Planning's approval of an exploratory sketch plan for a single family residential development on 50 acres of their property (the "Loven Subdivision").[4] Mrs. Harkins

1. 669 A.2d 100 (1995).

2. *Id.* at 103.

3. The combined properties are approximately 7 miles south of the Chesapeake and Delaware Canal, 3 miles east of Middletown, and 10 miles north of Smyrna. Thus, the property

is in the middle of New Castle County's Middletown–Odessa–Townsend District (M–O–T).

4. New Castle County Regulations on Subdivisions provide for three phases in the approval process for a subdivision plan. Petitioners for approval must submit: (1) an exploratory

maintains that no further effort was taken to obtain subsequent approvals because she and her husband became aware of the possibility that DelDOT would condemn a portion of their property. According to Defendants, such a condemnation would breed uncertainty and potentially make the Loven Subdivision unsuitable for development. Apparently, the Harkins submitted neither a preliminary nor a final plan for subdivision to the Planning Department.

Years passed and following the death of her husband, Mrs. Harkins created the Roseann H. Harkins Revocable Trust in 1994. The Trust owns the 106 acres of land that the Harkins acquired during the 1980s. Mrs. Harkins is the trustee and beneficiary of the Trust.

### The 1995 Conceptual Plan for the Loven Subdivision

In 1995, following notification from the State that a portion of the Trust lands would be condemned, Mrs. Harkins retained the services of F. Thomas Prusak, a licensed civil engineer employed by Landmark Engineering, Inc. According to Defendants, Prusak has 24 years' experience as a professional civil engineer in New Castle County, Delaware.[5] Prusak prepared a conceptual plan for the Loven Subdivision (the "Conceptual Plan"). The Conceptual Plan divides the property into 121 single family building lots and a 21–acre farmette.

In Prusak's professional opinion, the Conceptual Plan complied with the New Castle County Zoning Code, the Cluster Option Development Code, and the New Castle County Subdivision and Land Development Regulations in effect on August 29, 1995, the date of the taking, for minimum lot sizes, open spaces, roads and drainage facilities. Based on his past experience with the New Castle County Department of Planning, Prusak opines that it is reasonably probable that the Planning Department would approve a final plan for subdivision that is substantially the same as the conceptual plan devised by him.

### The Parker Appraisal: The Subdivision Development Method

In the summer of 1995, following the completion of Mr. Prusak's Conceptual Plan, Mrs. Harkins commissioned Gary V. Parker,[6] President of Advisory & Appraisal Company, to appraise the value of the Trust lands before and after the partial taking to determine just compensation. Parker issued a 60–page report (the "Parker Appraisal") based on the assumption that it is reasonably probable that the New Castle County Department of Planning would approve the Prusak Conceptual Plan or one similar to it.

In his lengthy report, Parker analyzed a variety of developmental factors and concluded that the "highest and best use" of the land would be to develop 85 acres under the New Castle County Cluster Option Development Code and leave 21 acres as an improved farmette. Within 85 acres were 121 residential building lots. This

---

sketch plan; (2) a preliminary plan; and (3) a final plan. See The Code of New Castle County Delaware, Chapter 32 ("Subdivisions"). The exploratory sketch plan must be submitted to the County Department of Planning for the purpose of providing the Department "with an idea of the concept the subdivider has in mind...." Id. at 32–92. The exploratory sketch plan must contain, inter alia, approximate tract boundaries, proposed general street and lot layout, proposed sources of water supply, a method of sewage disposal, and the proposed stormwater management and outfall locations. Id. 32–326.

5. Mr. Prusak has previously assisted in obtaining approval from the New Castle County Department of Planning for subdivisions in the southern part of New Castle County. These subdivisions include: Villages at Fairview Farm, Lea Eara Farms, and Country Club Estates.

6. Defendants allege that Parker is a certified general real property appraiser, see 24 Del.C. § 2930, as well as a member of The Appraisal Institute and The American Society of Real Estate Counselors.

outcome is consistent with Prusak's Conceptual Plan.[7] Among the factors that Parker investigated in determining the highest and best use of the property were: (1) the trend of suburbanization in the Middletown–Odessa–Townsend District; (2) short-term and long-term supply and demand trends for the residential market in New Castle County; and (3) the subject property itself, including: water and sewer issues,[8] zoning, and land use regulations.

After concluding that the highest and best use of the property was a 121-lot residential development and a 21-acre farmette, Parker proceeded to value the Harkins real estate. To the dismay of the State, Parker employed the subdivision development method.[9] The Defendants and Parker contend that the subdivision development method is a synthesis of three traditional approaches to valuation: the sales comparison approach, the cost approach, and the income capitalization approach.[10] In applying the subdivision development approach, Parker: (1) determined the size and number of lots that could be created from the appraised land;[11] (2) estimated the likely retail sale prices of the lots, the probable development period, and the absorption rate; (3) subtracted from the sum of the projected sale prices the direct and indirect costs associated with developing and marketing the lots; and (4) recognized the risk that accompanies the anticipated selling period by applying a discount rate. Defendants claim that the subdivision development method of real estate valuation is widely accepted by the local financial community.[12]

### *Mrs. Harkins' Experience in the Real Estate Profession*

Defendants allege that Mrs. Harkins' substantial experience in the real estate profession informed all major decisions relating to the property, including: the 1981 and 1986 purchases; the commission of the 1987 exploratory sketch; the decision not to pursue further approvals from the New Castle County Department of Planning in light of possible takings; the retaining of Mr. Prusak in 1995 to devise a conceptual plan; and the hiring of Mr. Parker to appraise the real estate. Mrs. Harkins is a registered and licensed real estate broker in Delaware, Maryland and Pennsylvania, with 24 years' experience as a real estate professional and over 17 years' experience as a home builder in New Castle County, Delaware. Over this period, Mrs. Harkins allegedly has negotiated the purchase of undeveloped and unsubdivided properties for development as residential subdivisions, obtained zoning and subdivision approval of residential subdivisions, and negotiated contracts with utilities for water, sewer, gas and electric services. Mrs. Harkins maintains that the Parker

---

7. The question of what constitutes the highest and best use of the Harkins property is not in dispute. The State's appraiser concluded that "[t]he greatest economic and market demand would be best reflected by [a] single family residential development. This scenario is estimated to be financially feasible and maximally productive, targeting an active market segment [ ] with medium-large homes in the mid market price range." (Defendants' Brief, Ex. B, Borek Appraisal.)

8. For example, the report identified a pumping station, estimated to cost $100,000, that may be required of the development to hookup to the public sewer near Odessa.

9. Mr. Parker also employed the sales comparison approach.

10. *See Wilmington Housing Auth. v. Greater St. John Baptist Church*, Del.Supr., 291 A.2d 282, 284 (1972).

11. This takes into consideration such things as: zoning, available utilities, community conditions, and access. *See* Appraisal Institute, *The Appraisal of Real Estate* 305–07 (10th ed.1992).

12. Defendants claim that the following institutions accept the subdivision development method: Wilmington Trust Company, PNC Bank, CoreStates, Artisans' Bank, Beneficial Bank, Mellon Bank, Nations Bank, and First Union Bank.

Appraisal provides an accurate account of the costs that would be incurred in financing and developing her property in accordance with Prusak's Conceptual Plan.

## III.

### "Teachers Insurance" and the Liberal Approach

#### To Real Estate Valuation

##### The Three Traditional Approaches to Real Estate Valuation

Traditionally, Delaware courts have used three methods to value real estate for the purpose of achieving just compensation following a taking: (1) the capitalization of income approach; (2) the comparative sales approach; and (3) the replacement cost approach.[13] Because "just compensation" equates to the fair market value of condemned property,[14] the purpose of these approaches is to provide an accurate account of the fair market value of the taken property: that is, what a willing buyer would agree to pay a willing seller for the property.[15] To better ascertain the fair market value of real estate, the Delaware Supreme Court liberalized its position as to which appraisal methods can be utilized. In *New Castle County Department of Finance v. Teachers Insurance and Annuity Assoc.*, the Supreme Court held that three traditional approaches no longer represent the only means by which parties may determine a clear picture of the fair market value of condemned property.[16] In this case *sub judice*, *Teachers Insurance*, and the Supreme Court case on which it relies, *Weinberger v. UOP, Inc.*,[17] provide the basis for this Court's holding.

### The Liberal Language and Spirit of "Teachers Insurance"

■ *Teachers Insurance* addresses the issue of "whether a taxpayer's appraisal, and related testimony, which evaluated the leased value of property, constituted competent evidence of value for purposes of a property tax assessment."[18] While acknowledging the three principal methods of valuing real estate, the Supreme Court determined that the taxpayer's "leased fee" valuation analysis presented competent evidence of overvaluation to the New Castle County Board of Assessment Review. In broad language as applicable to condemnation proceedings as to tax assessments, the Supreme Court held that methods of valuation that are "generally considered acceptable in the financial community and otherwise admissible in court" constitute "competent evidence of valuation."[19] The court stated that

> [i]n the context of corporate valuations, the so-called "Delaware Block" method of valuing stock, or a company, was replaced in 1983 with a "more liberal approach [allowing] proof of value by any techniques or methods which are generally considered acceptable in the financial community and otherwise admissible in court ..." *Weinberger v. UOP, Inc.*, Del.Supr., 457 A.2d 701, 713 (1983). We hold that this same standard should apply to the determination of the fair market value of real estate.[20]

13. *Greater St. John Baptist Church*, 291 A.2d at 284.

14. *State v. Davis Concrete of Delaware, Inc.*, Del.Supr., 355 A.2d 883 (1976).

15. *0.744 Of An Acre of Land v. State ex. rel. State Highway Dep't*, Del.Supr., 251 A.2d 341 (1969).

16. 669 A.2d 100, 102–03 (1995).

17. Del.Supr., 457 A.2d 701 (1983).

18. *Teacher's Insurance*, 669 A.2d. at 101.

19. *Id.* at 103.

20. *Id.* In *Weinberger*, the Supreme Court stated that the weighted average method of valuing shares, which had been used for decades, was a "clearly outmoded," "very structured and mechanistic procedure." 457 A.2d at 712–13. Traditionally, courts would determine "value per share" by assigning elements of value (assets, market price, and earning, etc.) particular weights. *Id.* at 712.

Thus, in valuing the fair market price of real estate, parties are not confined to the three traditional approaches and may use methods generally accepted in the financial community. This finding is subject, however, to a significant caveat: the valuing method cannot be employed in a speculative manner.[21]

■ In the instant case, the Court finds that Defendants have alleged sufficient facts which show that the subdivision development method is generally accepted in the financial community as demonstrated by the fact that such institutions as Wilmington Trust Company and PNC Bank accept this method of valuation. The Court also finds that Defendants have alleged facts that sufficiently dispel concerns about speculation. A review of the facts as presented to the Court and described *supra*, attest to the non-speculative use of the subdivision development method in this particular case. The professional qualifications of Mrs. Harkins, Mr. Prusak, and Mr. Parker, as well as the level of detail that characterizes the Parker Appraisal, represent a unique array of facts, providing a proper foundation for permitting the admission of the appraisal in evidence .[22]

### The State's Arguments

The State argues that the holding in *Teacher's Insurance* is limited to property tax assessments and insists that because the Supreme Court did not specifically overrule *Greater St. John Baptist Church* or adopt the "subdivision development approach," the three traditional methods of valuation remain the only methods available to determine just compensation. The State's contentions lack merit. Its preference for a mechanistic approach to valuation blinds the State to the expansive scope of the Supreme Court's ruling in *Teachers Insurance*. The State, moreover, offers no logical reason why the Court's holding should be confined to tax assessments. The language of the opinion asserts no such limitation and the Court's willingness to expand its holding in *Weinberger*, which concerned methods of valuing corporate stock, to encompass real estate tax assessments surely contemplates condemnation valuation within its purview.

The State points to a Superior Court bench ruling in *State v. Thetavest*, issued subsequent to *Teachers Insurance*, that prohibited an appraisal based on the subdivision development method from admission in evidence.[23] It appears that the parties in *Thetavest* were simply admonished for failing to file motions *in limine* and to provide adequate information on the issue of this particular method's admissibility. "If I'd have known what I know now—I'm not satisfied that I know as much as I would like to know—I would surely have had the opportunity to do more specific research and to be in a position to at least direct you all as to the inquiries that I wanted made." [24] No where in the ruling does it appear that the principles of *Teachers Insurance* case were presented for the court's consideration.

Finally, the State contends that in *Pollak v. State*, decided subsequent to *Teachers Insurance*, the Supreme Court did not overrule the prohibition against valuation

---

21. *Weinberger*, 457 A.2d at 713.

22. The State asserts that the subdivision development method is inadmissible as a method of valuation because the "per lot" valuation technique involves "imaginary and speculative assumptions regarding the subdivision of property." *State of Delaware v. C. Spencer Hawkins*, Del.Super., C.A. No. 91C–10–183, Quillen J. (May 16, 1996) (Bench Ruling). But the State overlooks other pertinent parts of the bench ruling. In *Hawkins*, the court rejected the "per lot" method

or the developmental approach to valuation because those approaches were not "done in this appraisal in a non-speculative way." The court stated further that a proper foundation had not been provided.

23. *State v. Thetavest*, Del.Super., C.A. No. 93C–05–009, Graves, J. (Jan. 18, 1996) (Bench Ruling).

24. *Id.*

of unsubdivided land on a per lot basis.[25] In *Pollak,* the Court affirmed a Superior Court decision to exclude from admission in evidence a conceptual plan prepared for landowners. The Court stated that "[v]aluation of undeveloped land based *solely* on an aggregate of its per lot value is not permissible." [26]

This Court, however, finds no inconsistency between its holding in the instant case and the ruling in *Pollak.* The valuation of the Harkins property is not based *solely* on an aggregate of per lot value. The supporting authority which *Pollak* cites for the proposition that "[v]aluation of undeveloped land based solely on an aggregate of its, per lot value is not permissible" makes pointed mention to the fact that "there was no reasonable probability of subdivision." [27] By contrast, Defendants have alleged facts supporting the contention that there is a reasonable probability of subdivision. The court in *Pollak* noted that there was insufficient foundation for the attempted introduction of the conceptual subdivision plan prepared for the landowners. Apparently, the landowners in *Pollak* sought to introduce the plan during cross-examination of the State's expert witness without first providing a proper foundation. The Defendants in the instant case have laid a proper foundation for the admission of the Parker Appraisal.

Thus, *Pollak* does not apply to the facts of this case.

## IV.

### *Conclusion*

■ Defendants have alleged sufficient facts suggesting that the subdivision development method is generally accepted by the financial community and was employed in a non-speculative manner. Therefore, this Court holds that the Parker Appraisal is relevant evidence, and, as such, is admissible under Rule 402 of the Delaware Uniform Rules of Evidence.

### ORDER

For the reasons set forth in this Court's Opinion of September 18, 1997, Defendant Roseann H. Harkins Revocable Trust's Motion in Limine is hereby GRANTED. Plaintiff Department of Transportation's Cross–Motion in Limine is hereby DENIED.

IT IS SO ORDERED.

---

**25.** *Pollak v. State,* 1996 WL 470729, 1996 Del.Supr. LEXIS 285, Harnett, J. (Aug. 9, 1996).

**26.** *Id.* at *1, 1996 Del.Supr. LEXIS at *3 (emphasis added).

**27.** *See State ex rel. Price v. 2.7089 Acres of Land, Etc.,* Del .Super., 256 A.2d 275, 276

(1969) (explaining that the key issue was whether the expert testimony on defendants' damages for a taking "is admissible, since the testimony was based on a stated number of subdivision lots and their expected purchase price and *since there was no reasonable probability of subdivision* ") (emphasis added).