# IN THE SUPERIOR COURT FOR THE STATE OF DELAWARE

REYBOLD VENTURE GROUP V-A, LLC )
                                      )

      Appellant,                      )

                                        )

      v.                                   )

                                        )    C.A. No. N17A-09-005 DCS

NEW CASTLE COUNTY OFFICE OF   )

ASSESSMENT & NEW CASTLE        )

COUNTY BOARD OF ASSESSMENT   )

REVIEW                             )

                                        )

      Appellees.                    )

Submitted: March 1, 2018
Decided: June 27, 2018

*Upon Appeal from the New Castle County Board of Assessment –*
**REMANDED.**

## OPINION

Michael J. Issacs, Esquire, Attorney for Appellant.
Wali W. Rushdan, II, Esquire, Attorney for Appellant.
Adam Singer, Esquire, Attorney for Appellees.

**STREETT, J.**

## Introduction

On appeal from the New Castle County Board of Assessment Review (the "Board"), Reybold Venture Group V-A, LLC ("Appellant" or "Reybold") asserts that its lack of access to the appraisal data of the New Castle County Office of Assessment ("County") prior to a Board hearing and the Board's decision not to grant Reybold's mid-hearing request for a continuance violated Reybold's right to due process.

The County and the Board contend that Appellant had no right to pre-hearing discovery and had sufficient time to review the County's appraisal data during a brief hearing recess.

The Court finds that, under the totality of the circumstances, Appellant was denied due process.

## Factual and Procedural History

Between 2011-2017, Appellant constructed St. Andrews Addition, a 118 rental townhouse community in the Bear area of New Castle County.

In 2013, the County sent a notice of increased tax assessments. Appellant thought that the assessment was too high and compared the tax assessments of St. Andrews Addition to St. Andrews, a nearby subdivision of 327 rental townhomes, which was also constructed by Appellant between 2001-2005. Appellant believed that there was an unjustified difference between the tax assessments of St. Andrews

1

Addition and St. Andrews (as much as a 50% increase in assessment) which appeared to be the product of a significant overvaluation.

In 2014, Appellant appealed the tax assessments of 35 of the St. Andrews Addition townhomes.[1] Appellant and the County negotiated the matter for more than three years (2014-2017).[2] During that time, Appellant disclosed its data to the County and asked for the County's data. The County refused to provide the County's appraisal data. An agreement was eventually reached concerning the land assessments, however, there was no agreement reached concerning the assessment of the structures. The structure assessment disparity was negotiated until approximately 30 days prior to the Board hearing.

The Board hearing ("Hearing") was held on July 20, 2017. The Hearing started later than the appointed time because the Board considered and adopted an amendment to its procedural rules immediately prior to the Hearing.[3] The

---

[1] Record ("R.") at 1047.

[2] July 20, 2017 Hearing Transcript ("Tr.") at 15 ("More importantly, we've had a dialogue over almost four years of this issue, and there has been correspondence to this . . .").

[3] Tr. at 2 ("Good morning again. Continuation of the Board of Assessment Review today. At 9:00 o'clock we had a short business meeting to review some rules changes").

amendment created an appellant's right to obtain pre-hearing appraisal data from the County upon request.[4]

At the Hearing, Jerome S. Heisler, Jr. testified for Reybold. Georgianna Trietley testified for the County. Mr. Heisler, the managing member of Reybold, compared the tax assessments of the St. Andrews Addition to the tax assessments of St. Andrews.[5] Mr. Heisler acknowledged that the tax assessments of St. Andrews Addition should be higher than the tax assessments for St. Andrews (because the newer townhomes are larger) but opined that the 50% difference in assessment

---

[4] The new Board rule, provided, in pertinent part:

> Upon receipt of a notice of hearing, an appellant may request that Assessment disclose each exhibit that it intends to present in its case-in-chief in support of the assessment. Upon receipt of the appellant's request for disclosure, [the County] shall make one copy of each exhibit available to the appellant at the New Castle County Government Center, during regular business hours, no fewer than 7 (seven) business days prior to the hearing.

Board Rules of Procedure Art. VIII, § 8.
The Court will not directly address the new rule in this decision.

[5] Mr. Heisler stated:

> And my document is basically taking the existing assessed values, which are the most accurate way to determine whether you have proper assessments for similar properties, in my opinion, and then using that statistical database, 329 units.
>
> . . .
>
> You can see from this line, this is the St. Andrews pool of data. This is [St. Andrews Addition] up here. There's a step function difference. It shifts up. So that's how we knew there was something going on. And this is just for assessed structures.

Tr. at 25-26.

between the two subdivisions was too high.[6] Mr. Heisler also noted that "[w]e know the person who did the original assessments was let go from the County"[7] and "[a]s part of [] dialogue [with the County] I learned that, one, there was a new assessor out there and she was later let go from the County because of inaccuracies in her assessment."[8]

Georgiana Trietley, a licensed assessor for the County[9], was the County's witness. Ms. Trietley testified that the County's appraisal data was comprised of "county records, public records, recorder of deeds, [and] our own data for the properties that were comparable."[10] She stated that although St. Andrews Addition was rental property, it should be assessed by using 1983 sales comparables [instead of rentals] because the base year for tax assessments is July 1, 1983. Ms. Trietley created a table with the data based on the comparable properties and that table was

---

[6] Tr. at 29 ("We actually, what happened was the square footage of the units in [St. Andrews Addition] are larger, so we should have a larger valuation [than St. Andrews]. I don't disagree with you . . . [i]t shouldn't be a step 50 percent higher, and that's what we were getting").

[7] Tr. at 27.

[8] Tr. at 15.

[9] Tr. at 61.

[10] Tr. at 62.

put into evidence as Exhibit 2. Two other exhibits were also admitted into evidence.[11]

Ms. Trietley explained her methodology and that the appraisal data presented at the Hearing had been compiled shortly before the Hearing-- "within the past 30 days" (of the Hearing).[12] She further testified that she selected (with difficulty)[13] five comparable 1983 sales of residential homes in the Bear, Delaware area,[14] adjusted the square footage of the selected comparable properties to the square footage of the St. Andrews Addition, and then applied the comparable property price per square foot to the square footage of the disputed St. Andrews Addition structures.[15]

---

[11] Exhibit 1 was a compilation of the 35 property dockets on appeal. Tr. at 2.; Exhibit 1A was a comparable sales sheet with the cost per square foot of each unit based on the building itself, not including land. Tr. at 61; Ms. Trietley's exhibits included the pictures of the comparable sales properties and the comparison between the comparable sales properties and the St. Andrews Addition structures. R. at 1052-60.

[12] Tr. at 82.

[13] Tr. at 64 ("[I]t was very difficult to find comparable sales of that type of unit").

[14] Tr. at 85 ("The comparables that I selected were all from the neighborhood that [St. Andrews Addition] is in. So as opposed to going to Pike Creek to find that three-story, lower-car garage, and having that, you know, be so far away, I select -- I elected to stay within the Bear area.").

[15] *See* R. at 1052-60; Ms. Trietley explained:

> It's the cost per square foot of that adjusted value. Okay? The first line is the net adjustment, the second line is the adjusted sale price, and then in the gray areas it's the percentage of adjustment and the cost per square foot. So I used that, you know, that range to apply to the adjustments I was making to the cost per – to the square foot of the building because the land had already been taken care of.

Ms. Trietley acknowledged that the square footage upon which the County based its original assessments [and on which Appellant appealed to the Board] was incorrect. She stated that "[someone] [] went out and re-measured all of the parcels, you know, all of the St. Andrews Addition buildings, so that you know, some of them did have bad measurements, so they've been corrected, and my new assessed value sheet have the corrected square footage that we currently have."[16] She also conceded that the tenant appeal of the recently selected comparables was different from the tenant appeal of the townhomes at St. Andrews Addition.[17]

The Board then took a brief recess to make copies of the County's exhibits.[18] Appellant remarked that it would like to review the exhibits during the recess. Appellant was allowed to review the exhibits. After the recess, the County continued its direct examination of Ms. Trietely.

On cross-examination, Ms. Trietley acknowledged that "she was concerned that St. Andrews [was] not assessed high enough"[19] and that the difference in

---

Tr. at 65.

[16] Tr. at 74-75.

[17] Tr. at 77. Ms. Trietley stated that she also considered the amenities and curb appeal. She testified that "we used a cost approach, so we're looking at cost approach and market approach for a semblance of what we feel the assessed values should be."

[18] Tr. at 72 (The Chairman stated, "Can we take a five-minute recess while we're waiting for those [copies]").

[19] Tr. at 83.

6

assessments between St. Andrews and St. Andrews Addition was the result of "the divergence in the types of buildings from the 1,200-square-foot to the 2,500-square-foot. And that, you know, and in a tenant-appeal situation, St. Andrews is, you know, 15 years old, and [St. Andrews Addition] is only, is newer, less than five years old."[20]

Mr. Heisler then testified as Appellant's rebuttal witness. Mr. Heisler challenged the County's choices of comparable properties.[21] He explained that St. Andrews Addition and St. Andrews have comparable amenities because the larger St. Andrews units "have finished basements some of them, decks, similar to the ones - - with patios underneath, similar to the ones we have in [St. Andrews Addition]. So there is comparability"[22] and he proffered Appellant's calculation of the square footage of the St. Andrews Addition structures. Mr. Heisler also commented that he had not seen the County's data exhibits until the Board Hearing recess[23] and that the County's calculation of the square footage of the St. Andrews Addition structures

---

[20] Tr. at 86-87.

[21] Tr. at 96-97 (". . .it's really disconcerting when I look at these pictures, when I look at everything, how we're going about trying to say [that the selected five 1983 property sales and the St. Andrews Addition structures] are comparable").

[22] Tr. at 92.

[23] Tr. at 92.

was inaccurate.[24]  Mr. Heisler also expressed frustration with the County's methodology.[25]

Mr. Heisler then asked for a continuance so that he could address the exhibits.[26]  The Chairman of the Board appreciated Appellant's need to study the presented data, including the changes to it, but denied the request.[27]  The Chairman said, "I believe that there is enough of a reasonable cause that's been made by the County to offer the [A]ppellant some improvements [lower assessments] from what were the assessed values before you came here."[28]

---

[24] Specifically, Mr. Heisler stated:

> And [the square footage of the St. Andrews Addition structures have] been rounded one way or another. That may not mean very much, but for me that's concerning because when you start talking a couple hundred units or a hundred units, rounding 70 here and 50 here adds up to a lot of dollars after a while.

Tr. at 65.

[25] Tr. at 99 ("[T]enant appeal is an interesting thing, but it has to be tenant appeal back in 1983, not tenant appeal today. And that's very frustrating because I don't see how you adjusted for tenant appeal in 1983 dollars, and you haven't here").

[26] Tr. at 96 ("If we want to have a transparent process, one that's deliberative, one that has sunshine in it, and I believe in sunshine, I would like to ask for a continuance so I can respond to this exhibit").

[27] Tr. at 105 ("And I appreciate what you say about, you know, having opportunity to study data, but I believe there's enough of a reasonable cause that's been made by the County to offer the appellant some improvements from what were the assessed values before you came in here . . .").

[28] Tr. at 106 (The Chairman stated, "I mean, I think you can go right down the list, Joe [another Board member], and you can see that [the assessments are] lower").

After Mr. Heisler challenged the County's calculations, Ms. Trietley admitted to the Chairman that her data was internally flawed and asked for an opportunity to "run [the numbers] again."[29]

| | |
|---|---|
| THE CHAIRMAN: | So you had 88,300 represented the final value of land and building. |
| MS. TRIETLEY: | Correct. |
| THE CHAIRMAN: | Okay. And then you have a new building value of 73,800. |
| MS. TRIETLEY: | Correct. |
| THE CHAIRMAN: | And if you subtract that from the 88,300— |
| MS. TRIETLEY: | No. You have to look at the final value or the building value. The building value previously was 80,600. |
| THE CHAIRMAN: | Right. And now you're at 73,800. |
| MS. TRIETLEY: | Now we're at 73,800. |
| THE CHAIRMAN: | So how do you get a difference of minus $14,500? |
| MS. TRIETLEY: | Because you have to add in the land. |
| THE CHAIRMAN: | Okay. But when you add in the land, isn't that new value $81,500? |
| MS. TRIETLEY: | Yes. |
| THE CHAIRMAN: | If you compare 81,500 to 88,300, which was the land and the building, how do you get $14,500? |
| MS. TRIETLEY: | **My excel didn't do that right** because they—88,300 |
| THE CHAIRMAN: | And I'm looking at that being the case in all of them. |
| MR. HEISLER: | It is. It's a formula error. |
| ... | |
| MS. TRIETLEY: | I think that, yeah the difference would be that—88,300— |
| UNIDENTIFIED SPEAKER: | 6,800 |
| MS. TRIETLEY: | Yeah. 6,700. |
| THE CHAIRMAN: | It would be 6,800. |
| MS. TRIETLEY: | Right. |
| THE CHAIRMAN: | It's 81,500 against 88, 300. |
| MS. TRIETLEY: | Right. It's 6,700. |
| THE CHAIRMAN: | 6,800. |
| MS. TRIETLEY: | 6,800. |
| THE CHAIRMAN: | Right. So this— |
| MS. TRIETLEY: | **Column is wrong.**[30] |

---

[29] Tr. at 104.

[30] Tr. at 102-04 (emphasis added).

The Board then acknowledged that the County's witness had presented incorrect information.

| | |
|---|---|
| THE CHAIRMAN: | This column is wrong. So when we were talking about the benefit to the appellant was almost $186,000, that's not true. |
| MS. TRIETLEY: | We can—**I can go back and try to run it again.** Yeah. |
| THE CHAIRMAN: | I'm not trying to change everything. You know, this is a document that's going into the record, and that column is not accurate.[31] |

The Chairman then struck the inaccurate portion of Ms. Trietley's data from the record.[32] The Board considered the revised reassessment and unanimously accepted the newly announced assessed values, which were lower (and based on different data), than the assessed values that Appellant first challenged.

On August 10, 2017, the Board issued its formal Opinion. The Opinion explained that the comparable sales approach utilized by the County was a "recognized method of valuation,"[33] that the comparable sales properties that the County used in support of its valuation were all within two miles of St. Andrews

---

[31] Tr. at 104 (emphasis added).

[32] Tr. at 105 ("So I want to note for the record that New Castle County Exhibit 2, the final column called 'Difference' really should be stricken because that is not accurate data, both pages").

[33] R. at 1046.

Addition,[34] and that the Court has historically supported the comparable sales method and rejected the comparable assessments method.[35]

On September 15, 2017, Appellant filed its Notice of Appeal of the Board's decision.

## Parties' Contentions

On December 29, 2017, Appellant filed its Opening Brief. Appellant asserts that the Board violated Appellant's right to due process when it denied Appellant's request for pre-hearing discovery and denied Appellant's request, during the Hearing, for a continuance in order to have sufficient time to review the County's newly revealed appraisal data which resulted in an assessment lower than the appealed assessment.[36]

Specifically, Appellant contends that "[c]onsidering the important nature of this appraisal data, disclosing the appraisal data on the same date of the Hearing failed to provide Appellant the proper notice to which it [was] entitled"[37] and that "Appellant explicitly requested [the County's appraisal data] on several occasions

---

[34] R. at 1045 ("All of the comparable properties are within two miles of the [S]ubject Properties").

[35] R. at 1045 citing *Jones v. New Castle County Board of Assessment Review*, 1987 WL 12442 (Del. Super. June 5, 1987).

[36] Op. Br. at 12.

[37] Op. Br. at 12.

11

between fall 2013 and the Hearing, but the County refused to provide this information to the Appellant."[38] Appellant also asserts that the continuance denial unfairly prejudiced Appellant and was somewhat ironic in light of the Board's amendment of a procedural rule, moments before the Hearing, which recognized the importance of informed and germane appeals.[39]

Appellant argues that the denial of a continuance was unfair because Appellant had little basis upon which to challenge the County's new revised reassessments that only became known after Appellant's witness had testified. Appellant asks the Court to remand this matter because "[t]his denial prohibited Appellant from having a fair opportunity to analyze and rebut the County's appraisal data in advance of the Hearing."[40] Appellant further claims that "[t]he County's last minute introduction of their appraisal data on the same day of the Hearing materially prejudiced Appellant's ability to properly analyze and rebut the same."[41]

On February 6, 2018, Appellees filed their Answering Brief. Appellees argue that the absence of formal discovery in administrative proceedings does not violate

---

[38] Op. Br. at 5.

[39] Op. Br. at 12.

[40] Op. Br. at 16; *See also* Tr. at 27 (Mr. Heisler stated, "So that's why when I was here for the meeting, I asked to see their data pool, whatever the six pieces or twenty pieces of sales they used because we have pockets of poverty along Route 40. We have pockets of nice neighborhoods").

[41] Op. Br. at 13.

due process,[42] "[n]othing precluded [Appellant] from conducting its own research of comparable properties that were sold and presenting that evidence to the Board in its case in chief,"[43] and "[Appellant] [] failed to show how a continuance would have changed the outcome."[44]

On February 27, 2018, Appellant filed its Reply in Further Support of Its Opening Brief. Appellant asserted that allowing Appellant to view the County's appraisal data during a brief recess "hardly cured the prejudice that Reybold faced by having to confront this data for the first time at the [H]earing."[45]

## Standard of Review

This Court's authority to review appeals from the Board is governed by 9 *Del. C.* § 8312(c), which provides that "[t]he decision of [the Board] shall be prima facie correct and the burden of proof shall be on the appellant to show that such body acted contrary to law, fraudulently, arbitrarily or capriciously."[46] The Appellant

---

[42] Ans. Br. at 15.

[43] Ans. Br. at 16.

[44] Ans. Br. at 16.

[45] Reply Br. at 4 ("These appraisals can take weeks, and sometimes months to put together. The validity of the appraisal is based on the validity of the adjustments. Without the benefit of having a real opportunity to study the underlying property data that went into the appraisal, you cannot fairly ask questions about it").

[46] *O'Neill v. Bd. Of Assessment Review*, 1986 WL 14018, at *1 (Del. Super. Nov. 21, 1986).

faces "a substantial evidential burden" before both the Board and this Court.[47] At a hearing before the Board, there is a presumption of accuracy in favor of the County's assessment.[48] That presumption can only be overcome by competent evidence sufficient to show a substantial overvaluation.[49] On appeal to this Court from the Board, "[t]he reviewing court is not to reverse if it finds that the Board relied in part on incompetent evidence but only if the Board's findings are clearly wrong and its conclusions not the product of an orderly and logical deductive process."[50] The Board's decision not to grant Appellant's request for a continuance is reviewed under an abuse of discretion standard.[51] This Court may remand a matter back to

---

[47] *Seaford Associates, L.P. v. Bd. of Assessment Review*, 539 A.2d 1045, 1047 (Del. 1988).

[48] *Fitzsimmons v. McCorkle*, 214 A.2d 334, 337 (1965) ("On an appeal from an assessment, a *prima facie* case of accuracy is made by the assessment record. The burden of presenting evidence to meet the *prima facie* case and to rebut the presumption rests upon the property owner").

[49] *Tatten Partners, L.P. v. New Castle Cty. Bd. of Assessment Review*, 642 A.2d 1251, 1256 (Del. Super. 1993), *aff'd sub nom. New Castle Cty. v. Tatten Partners, L.P.*, 647 A.2d 382 (Del. 1994) ("The burden of presenting evidence to meet the prima facie case and to rebut the presumption rests upon the property owner. To fulfill the purpose, the owner's evidence must not only be competent; it must be sufficient to show a substantial overvaluation."); *See also Delaware Racing Ass'n v. McMahon*, 340 A.2d 837, 840 (Del. 1975).

[50] *Brandywine Innkeepers, L.L.C. v. Bd. of Assessment Review*, 2005 WL 1952879, at *3 (Del. Super. June 3, 2005).

[51] *In re Gresick*, 1988 WL 116411, at *8 (Del. Super. Nov. 2, 1988) (finding in a Board of Consumer Affair's case that "The Board's action was discretionary and it must be reversed only if the Board abused its discretion in denying the recess").

the Board "to clarify issues of fact or to make findings consistent with the Court's decision."[52]

## Discussion

Appellant asserts that it was denied its right to due process because the Board refused to provide pre-hearing discovery and declined to grant Appellant's mid-Hearing request for a continuance in order for Appellant to sufficiently evaluate the County's changing and inaccurate appraisal data (particularly since the County denied Appellant's request for the County's appraisal data prior to the Hearing). A determination on this issue is fact-specific.[53]

Concerning the continuance request made during the Hearing after the County presented its witness and exhibits, Mr. Heisler stated that "I would actually like time to respond to the exhibit . . . I think this is sort of a shotgun approach if this is the only time I get on something this major. I would like time to respond to this because I think it's important to the overall process."[54] However, the Board denied the request and offered as its reason that the revised reassessments were "some

---

[52] 9 *Del. C.* § 8312(c) states in pertinent part: "The Court may affirm, reverse or modify the decision of such body and the decision of the Court shall be final. The Court at its discretion may also remand the matter to the board to clarify issues of fact or to make findings consistent with the Court's decision."

[53] *Fairwinds Shopping Ctr., Inc. v. Bd. Of Adjustment*, 1993 WL 258801, at *6 (Del. Super. June 4, 1993) ("Ultimately, of course, each such case turns on its own particular facts").

[54] Tr. at 96.

improvement" (lower than the original County assessments that Appellant appealed).[55] The Board did not address Appellant's concern about the process.[56]

Based on the totality of the circumstances, the Court finds that the Board's decision to deny a continuance was an abuse of discretion. Appellant was prejudiced by the Board's denial. In *O'Neill v. Board of Assessment Review*,[57] this Court held that a proceeding before the Board was "fundamentally unfair" when the County presented proposed reassessed property valuation figures at a hearing where the appellant contended that such evidence "constituted surprise" and "deprived [] her [of her] right to effectively cross-examine and present evidence."[58] Upon a finding that the Board relied on figures that were not introduced into evidence or made available to the Appellant prior to the hearing in *O'Neill*, the Court remanded for a new administrative hearing.[59]

---

[55] Tr. at 105 ("And I appreciate what you say about, you know, having opportunity to study data, but I believe there's enough of a reasonable cause that's been made by the County to offer the appellant some improvements from what were the assessed values before you came in here . . .").

[56] Tr. at 34. ("I would like to know how the county is doing their assessment").

[57] *O'Neill* at *1.

[58] *Id.* at *1.

[59] The *O'Neill* Court found:
> . . . [t]he figures relied upon by the Board were not formally introduced into evidence nor made available to O'Neill prior to the hearing. As such this Court finds that the proceeding before the Board was fundamentally unfair in that O'Neill was deprived of her right to effectively cross-examine and present evidence.

*Id.*

16

Here, although Appellant learned of the figures and revised figures during the Hearing, Appellant did not have an opportunity to meaningfully review or challenge the County's reassessments and/or the revised reassessments. Despite Reybold's negotiations concerning pre-hearing assessments with the County for almost four years, the County did not present those pre-hearing assessments during the Hearing.[60] During the Hearing, the County's witness conceded that the assessed values that were used during negotiations and formed the basis of Appellant's appeal were incorrect because they were based on inaccurate square-footage measurements of the St. Andrews Addition structures.[61] The County, instead, presented reassessments and then as the Hearing progressed, revised those reassessments. As such, the County proffered two new and different assessments during the Hearing.

Appellant's presentation of its case at the Hearing focused on pre-Hearing assessments put forth by the County during negotiations. Appellant was not

---

[60] Although Reybold and the County had been in the midst of tax assessment negotiations for nearly three years, the County had just prepared its proffered appraisal data 30 days prior to the Hearing. Tr. at 82 (Q: "Ms. Trietley, when did you prepare Exhibit 1A?" A: "Within the past 30 days, say").

[61] Ms. Trietley stated:

> Larry (unintelligible), who kind of started on this project for looking at the discrepancies between [St. Andrews and St. Andrews Addition], went out and remeasured all of the parcels, you know, all of the buildings, so that, you know, some of them did have bad measurements, so they've been corrected, and my use new assessed value sheet have the corrected square footage that we currently have [*sic*].

Tr. at 74-75.

informed of the County's new figures or any basis for the new figures until after Appellant had presented its case, rested, and the County presented its witness. Appellant only had a brief period of time during the copying break to review and consider the County's post-negotiation figures which were revealed at the Hearing (and had been compiled only approximately 30 days prior to the Hearing). Furthermore, this was not the County's final version. The County's figures continued to change during the Hearing and were again revised after cross-examination and rebuttal. Moreover, the record does not reflect that Appellant had an opportunity to challenge the inaccurate revised reassessment figures that had been proffered after the recess.

There were protracted pre-Hearing negotiations, the County abandoned its pre-Hearing figures, and the County presented reassessments at the Hearing after those negotiations. The County did not present a firm, accurate, or unchanging assessment. Additionally, the County's witness wanted to go over the numbers again. [62] As such, the Court finds that the Board abused its discretion when it declined to grant the continuance.

---

[62] Tr. at 104. The Board also ignored the County's witness' uncertainty about the reassessment. Ms. Trietley said, "We can... I can go back and try to run it again..." The Chairman responded, "I'm not trying to change everything. You know, this is a document that's going into the record, and that column is not accurate."

Appellant appeared at the Hearing for the purpose of challenging the original assessments. Appellant was not aware of newly revised assessments or the changing nature of the revised assessment until after the County's witness testified. Due process requires that an appellant have notice of the subject matter of the proceedings[63] and due process is violated when "notice [] fail[s] to inform, and this lack of information [] prejudice[s] the party's ability to defend against the charges."[64] Although Appellant obviously knew the generalized nature of the subject matter (tax assessments of St. Andrews Addition rental townhomes), Appellant did not have notice that the County had been negotiating with incorrect assessment amounts. Additionally, Appellant did not have notice of the inaccurate reassessments that were proffered at the Hearing, the basis for the reassessments, or the inaccurate revised reassessments.

Because Appellant appealed to the Board, the County reexamined its data and determined that the pre-Hearing assessments were wrong. Appellant was prejudiced at the Hearing because the new inaccurate reassessments and new inaccurate revised reassessments hampered Appellant's ability to knowingly challenge the County's new valuations, meaningfully cross examine the County's witness, or present

---

[63] *Purnell v. Dep't of Ins.*, 2017 WL 3980539, at *7 (Del. Super. Sept. 7, 2017) ("Due process requires [only] that the notice inform the party of the time, place, and date of the hearing and the subject matter of the proceedings.") (internal citations omitted).

[64] *Gresick* at *6 (internal citations omitted).

19

responsive evidence. While Appellant presented evidence of comparable assessments (and did not use any of the three established methods of assessment when it presented its direct case),[65] a continuance would have given Appellant the opportunity to thoroughly review the new data,[66] challenge the County's clerical errors,[67] more thoroughly cross-examine the County's witness, and, arguably, rebut the County's selection of comparable homes, calculations of square footage, photos of curb appeal, comparable amenities, etc.

Furthermore, in view of the differing variations of the square-foot measurements that were presented at the Hearing by both parties, the square footage measurements of St. Andrews Addition townhouses appeared to be of significant importance to both presentations.[68] Here, square footage evidence included the

---

[65] *See Dep't of Fin v. Teachers Ins. & Annuity Ass'n*, 669 A.2d 100, 102 (Del. 1995) ("The three principal valuation approaches used in determining the fair market value of real estate are: comparable sales (or market), income capitalization, and reproduction cost."); Tr. at 109 ([Board Member]: "But, you know, I just, that's one of the reasons why we don't use assessments in how other properties are assessed, because like you said, it could have been a clerical error...").

[66] Tr. at 109.

[67] Tr. 102-04 (Although the County utilized one of the three valuation approaches, the County's presentation contained clerical errors).

[68] Ms. Trietley stated:

> It's the cost per square foot of that adjusted value. Okay? The first line is the net adjustment, the second line is the adjusted sale price, and then in the gray areas it's the percentage of adjustment and the cost per square foot. So I used that, you know, that range to apply to the adjustments I was making to the cost per – to the square foot of the building because the land had already been taken care of.

Tr. at 65.

testimony by Mr. Heisler that a County assessor had previously been "let go" for calculating inaccurate square footage,[69] the testimony and concession by Ms. Trietley that the County's original square footage measurements of St. Andrews Addition were wrong,[70] and Mr. Heisler's rebuttal testimony that the newly presented square footage measurements were still inaccurate.[71] Refusing to grant a continuance denied Appellant the opportunity to meaningfully challenge whether the new valuations were also substantial overvaluations.

Moreover, prejudice exists even though there was a brief recess, Appellant engaged in cross examination of the County's witness (before and after the brief recess), and the ultimate assessed amounts were lower than the amounts originally assessed.[72]

The Board's decision to declare a brief recess for the purpose of making copies did not provide an opportunity for Appellant to meaningfully review the data. While Appellant, arguably, had the opportunity to review the reassessment figures

---

[69] Tr. at 15.

[70] Tr. at 74-75.

[71] Tr. at 92; Tr. at 110 (Board Member: "I'll just say on your point of the square footage, you're [(Appellant)] definitely right that there is only one accurate square footage number. Once you bring that point forward to us, that does raise the question are you assessed correctly").

[72] Tr. at 109 (Board Member: "[T]hey're actually offering you lower than the average of the five comparables in their offer. So I'm willing to go with what the County has presented. . .").

presented before the recess, Appellant had no opportunity to review or ascertain the County's bases for figures relied upon after the recess. Similarly, the denial of a continuance prevented Appellant from meaningful cross-examination of the witness' post-recess testimony concerning revisions and concessions of inaccuracy.

Additionally, the continuance deprived Appellant of due process despite the fact that the Board's decision was an "improvement" from the assessed values prior to the hearing.[73] The Board's refusal to continue the Hearing seemingly focused on the reassessment amounts rather than Appellant's right to due process despite the Board's recognition that due process includes an informed challenge to an assessment (as indicated by its adoption of a pre-hearing discovery rule that took place immediately prior to the Hearing).

The County did not clearly set forth its basis for the "improvement"[74] and, as such, the record does not reflect that the lower assessment was the product of a fair appraisal process.[75] Moreover, Appellant was deprived of a hearing process that would have provided an opportunity to challenge the improvement and, arguably, obtain a greater "improvement" (an even lower assessment).

---

[73] *See O'Neill* at *2 (deciding to remand where the County's reassessed figures were lower than those provided to O'Neill at the prior informal hearing).

[74] Tr. at 105.

[75] *See generally Delaware Racing Ass'n*, 340 A.2d 837, 844 ("It is incumbent upon the government in the exercise of its taxing authority to ensure the utmost fairness in the appraisal process").

Appellant also argues in this appeal that its due process rights were violated because the County did not produce the County's appraisal data prior to the Hearing (particularly since the Board's discovery rules were revised immediately prior to Appellant's Hearing to provide for pre-hearing discovery).[76] In light of the Court's ruling that the Board's denial of Appellant's continuance request during the Hearing violated due process, the Court need not address Appellant's pre-hearing discovery issue as grounds for remand and whether the new discovery rule can be retroactively applied.[77]

---

[76] Appellant expressed clear concern not only for how the County's process and methodology would affect him in this case, but also the importance of understanding the methodology for the future:

> [M]y concern is—and I'm not doubting anybody's integrity. That's not what it's about. It's about how accurate is the data and how it was generated. I can't see that. I can't question that. I want to question that, not in a negative way, but I want to understand what it is. So one of my requests today, no matter what the outcome is, is that I get to see that data. This is a big number to me. And I still have [80] more units coming online, so I would like to know how the County is doing their assessment.

Tr. at 34.

[77] As early as 1995, this Court recommended that the "Board exercise its authority [] to amend the Board's Rules to include a provision for some limited pre-hearing discovery" for an appellant-landowner. *1001 Jefferson Plaza P'ship v. Dep't of Fin.*, 1995 WL 717610, at *4 (Del. Super. Nov. 8, 1995) *rev'd on other grounds* (At that time, the Court did not have the authority to remand an appeal back to the New Castle County Board of Assessment), *1001 Jefferson Plaza P'ship v. Dep't of Fin.*, 695 A.2d 50. The Court concluded:

> No question exists as to the enormous burden that an appellant/property owner suffers in the midst of appeals to both the Board and Superior Court. The appellant/property owner is first required to rebut a presumption in favor of the County's assessment and then a presumption in favor of the Board's decision. Coupled with this stacked deck is the Board's requirement that the property

23

Here, Appellant requested a continuance and the County's witness requested a do-over. Both sides were concerned that something was wrong with this particular proceeding. The figures literally did not add up. While it is understandable that the Board would like to proceed as expeditiously as possible, under the circumstances set forth in the record, their requests for due process were not unreasonable or unwarranted. In view of the fact that negotiations to reach a partial resolution (regarding the land) spanned almost four years, a continuance to determine a reliable assessment regarding the structures would not have unduly delayed closure.

## Conclusion

Accordingly, based on the totality of the circumstances, this matter is hereby **REMANDED** to the Board consistent with this decision.

**IT IS SO ORDERED**.

_____
Diane Clarke Streett, Judge

---

owner produce, well in advance of the hearing, all of the evidence upon which the property owner intends to rely. The property owner, however, receives nothing from the County in advance of the hearing. The property owner has no advance opportunity to review the County's evidence or prepare for cross-examination.

. . .

At a minimum, the County should provide all documents and information utilized in support of the assessment along with any other materials required to interpret or otherwise decipher those documents (internal citations omitted).